**Doran S. WEINSTEIN and Jean S. Weinstein**

**v.**

**The UNITED STATES.**

**Nos. 275-68, 58-69.**

United States Court of Claims.

Jan. 23, 1970.

L. L. Leatherman, Louisville, Ky., attorney of record, for plaintiffs. Greenebaum, Barnett, Doll & Matthews, Louisville, Ky., of counsel.

Philip R. Miller, Washington, D. C., with whom was Asst. Atty. Gen. Johnnie M. Walters, for defendant. William C. Ballard, Jr., and Ira M. Langer, Washington, D. C., of counsel.

Before COWEN, Chief Judge, and LARAMORE, DURFEE, DAVIS, COLLINS, SKELTON and NICHOLS, Judges.

## ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

LARAMORE, Judge.

These are consolidated actions to recover Federal income taxes paid by plaintiffs for calendar years 1965, 1966 and 1967. Defendant has moved for summary judgment. The sole issue involves the deductibility under section 212 of the 1954 Code of certain expenses incurred by plaintiffs in their attempt to acquire investments.

Plaintiffs, husband and wife, employed the cash receipts and disbursements method of accounting and filed income tax returns for the years in suit on a calendar year basis. Plaintiff Doran Weinstein was president of Celanese Coatings Company, Division of Celanese Corporation, Louisville, Kentucky, until he resigned in March or April of 1965. Thereafter, he served as a consultant to Celanese until March or April of 1966. Mr. Weinstein was not employed again until 1968, when he accepted the presidency of Daylight Industries, Inc., Jacksonville, Florida.

Throughout the entire period in suit, plaintiffs had available to them, for investment purposes, securities, bank deposits and borrowing power aggregating approximately $750,000.

After terminating his employment relationship with Celanese, Mr. Weinstein

traveled extensively within the United States, inspecting and evaluating prospective investments with a view toward diversifying his existing portfolio. With respect to the many trips taken by Mr. Weinstein, some resulted in the consummation of investments, while others did not. In seeking, inspecting and evaluating the prospective investments, Mr. Weinstein incurred travel, lodging, meals and other miscellaneous expenditures which were deducted on the return filed by plaintiffs for each of the years in issue. Plaintiffs also deducted a portion of their rent expense, telephone expense and the cost of a Dun & Bradstreet service which supplied reports on the companies plaintiffs were investigating. Plaintiff Jean Weinstein traveled with her husband on some occasions and served as a "sounding board" for her husband. A portion of her expenses was also deducted, including some for a trip she made by herself for the purpose of investigating certain prospective investments.

The Commissioner of Internal Revenue disallowed the claimed deductions. Plaintiffs paid the assessed deficiencies and filed claims for refund. The refund claim for 1966 has been formally disallowed, and more than six months have expired since the filing of the refund claims for 1965 and 1967.

Section 212 of the Internal Revenue Code of 1954 provides in pertinent part:

> In the case of an individual, there shall be allowed as a deduction all the ordinary and necessary expenses paid or incurred during the taxable year—
>
> (1) for the production or collection of income;
>
> (2) for the management, conservation, or maintenance of property held for the production of income; * * *

Plaintiffs urge that since any gain derived from the prospective investments that were investigated would be in-

cludible in gross income, the expenses detailed above were incurred for the "production of income." Because the activities undertaken were for the purpose of diversifying an existing investment portfolio, moreover, plaintiffs assert that the subject expenses were also incurred for the "management, conservation, or maintenance of property held for the production of income." It is our opinion that plaintiffs' positions are not supportable in law and, therefore, are not well taken.

The substantively identical predecessor of section 212 was enacted in response to the holding of the Supreme Court in Higgins v. Commissioner, 312 U.S. 212, 61 S.Ct. 475, 85 L.Ed. 783 (1941), that the management of investments did not constitute carrying on a business and, therefore, expenses incurred in the management of such investments were not deductible as business expenses. The congressional intent underlying the new investment-deduction Code provision was "to provide for a class of nonbusiness deductions coextensive with the business deductions." Bingham v. Commissioner, 325 U.S. 365, 374, 65 S.Ct. 1232, 1237, 89 L.Ed. 1670 (1945); California & Hawaiian Sugar Refining Corp. v. United States, 311 F.2d 235, 245, 159 Ct.Cl. 561, 577 (1962).

It is well settled that expenditures made in connection with acquiring, rather than retaining or protecting, a business are not deductible as ordinary and necessary business expenses. George C. Westervelt, 8 T.C. 1248 (1947); Morton Frank, 20 T.C. 511 (1953). *See also,* McDonald v. Commissioner, 323 U.S. 57, 65 S.Ct. 96, 89 L.Ed. 68 (1944); John F. Koons, 35 T.C. 1092 (1961); T. R. Ewart, 25 TCM 96 (1966); Paul C. Seguin, 26 TCM 950 (1967). Similarly, the courts have held that expenses incurred in connection with searching for or acquiring new investments are nondeductible under section 212 and its predecessor.[1] *See,* Marion A. Burt Beck,

1. Plaintiffs rely on Colman v. United States, 1962–1 USTC, par. 9241, 9

AFTR2d 639 (D.Utah 1961), wherein travel expenses incurred in investigating

15 T.C. 642 (1950), aff'd per curiam, 194 F.2d 537 (2d Cir. 1952), cert. denied, 344 U.S. 821, 73 S.Ct. 18, 97 L.Ed. 639 (1952); *Morton Frank, supra; Paul C. Seguin, supra;* Eugene H. Walet, Jr., 31 T.C. 461 and n. 1 (1958), aff'd per curiam, 272 F.2d 694 (5th Cir. 1959).

■ In *Morton Frank, supra,* wherein travel expenses and legal fees spent by the taxpayer in search of a newspaper business to acquire were held nondeductible under the predecessor of section 212, the court stated, in pertinent part, 20 T.C. at page 514:

 * * * There is a basic distinction between allowing deductions for the expense of producing or collecting income, in which one has an existent interest or right, and expenses incurred in an attempt to obtain income by the creation of some new interest. [Citations omitted.] The expenses here involved are of the latter classification. * * *

That a proprietary or possessory type interest in the income-producing asset is prerequisite to the deductibility of related expenditures is further confirmed by Treasury Regulations on Income Tax (1954 Code) section 1.212–1(g), which states:

 Fees for services of investment counsel, custodial fees, clerical help, office rent, and similar expenses paid or incurred by a taxpayer in connection with *investments held by him* are deductible under section 212 only if (1) they are paid or incurred by the taxpayer for the production or collection of income or for the management, conservation, or maintenance of investments held by him for the production of income; * * * [Emphasis supplied.]

■ There can be no doubt, on the facts of the instant case, that plaintiff's expenditures were for the purpose of investigating and attempting to acquire

the acquisition of oil leases were held to be deductible when no acquisition resulted. We view this holding as contrary

new investments. Such expenditures were in no meaningful sense "for the production or collection of income" (from an existing property right, as section 212(1) has been interpreted); nor were they "for the management, conservation, or maintenance of property held for the production of income." Accordingly, defendant's motion for summary judgment is granted without oral argument, and plaintiffs' petitions are dismissed on the ground that plaintiffs, as a matter of law, are not entitled to recover.

to the underlying intent of section 212, inconsistent with the decided cases, and erroneous.