*Decision will be entered under Rule 50.*

GEORGE A. DEAN AND MARGARET S. DEAN, PETITIONERS *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 2216–68. Filed July 29, 1971.

*George L. Gisler,* for the petitioners.
*Wayne A. Smith,* for the respondent.

FORRESTER, *Judge*: Respondent has determined deficiencies in petitioners' income tax of $4,612.19 and $5,657.45 for the taxable years

ending in 1962 and 1963, respectively. The principal issue we must decide is whether certain payments received by petitioners during the years in issue constituted consideration for the transfer of property. Whether we may reach a consideration of this issue on its merits depends upon whether petitioners are barred by the doctrine of collateral estoppel. A second independent issue presented for our decision is whether petitioners are entitled to deduct as business expenses certain outlays related to the organization of a new corporation in 1963.

FINDINGS OF FACT

Some of the facts have been stipulated and are so found.

Petitioners, husband and wife, filed their joint Federal income tax returns on the cash basis for the taxable years ending in 1962 and 1963 with the district director of internal revenue in Kansas City, Mo. At the time of the filing of their petition herein petitioners resided in Kansas City, Mo. As Margaret S. Dean is a party herein only by reason of having filed a joint return, George A. Dean will hereinafter be referred to as petitioner.

The factual background relevant to the principal issue in this proceeding is essentially the same as that involved in docket No. 5692–63, which was reported in *George A. Dean*, T.C. Memo. 1966–258. The entire record in the earlier proceeding is incorporated herein by this reference. To facilitate our discussion in the instant proceeding, the principal facts will be repeated.

In order to handle the development and promotion of aeronautical products, petitioner in 1945 formed a sole proprietorship known as Products Promotion & Development Co. (hereinafter referred to as P.P.D.). In 1948 petitioner and members of the Benson family transformed P.P.D. into a partnership. In 1951 or 1952, Dean & Benson Research, Inc. (hereinafter referred to as D.B.R.), was incorporated to carry on research activities that had been conducted up to that time by P.P.D. Petitioner owned one-sixth of the stock of D.B.R. with the remainder being held principally by members of the Benson family.

In an agreement dated November 6, 1959, petitioner and Benson Manufacturing Co. (hereinafter referred to as B.M.C.) entered into an employment contract. By a document dated May 31, 1961, petitioner and B.M.C. entered into an agreement which, in part, modified or amended the contract of November 6, 1959. The original agreement as amended will hereinafter be referred to as the contract.

In part, the contract referred to past and future patents which petitioner owned or might own and provided that "this instrument shall be deemed an assignment thereof" by petitioner to B.M.C. The contract added:

Without limiting the generality of the foregoing, you [petitioner] hereby assign, transfer and set over to the Company all your right, title and interest in and to the following U.S. Letters Patent, together with all royalty rights in connection therewith:

 No. 2436087 "Cooling Fan for Aircraft Engines"
 No. 2595829 "Axial Flow Fan and Compressor"
 No. 2718153 "Drive Mechanism"
 No. 2648454 "Knock Down Streamline Container"
 No. 2582532 "Electric Fans"

The shareholders of D.B.R. contributed their stock to B.M.C. in 1959 and D.B.R. was subsequently liquidated into B.M.C. P.P.D. was dissolved in November 1959.

Under the contract petitioner received during the taxable years 1962 and 1963 certain amounts which were reported on petitioner's Federal income tax return as wages and which are not in dispute herein. In addition, in each of the taxable years 1962 and 1963 petitioner received, pursuant to the contract, the sum of $22,500, which is in dispute herein.

In September 1963, while still employed by B.M.C., petitioner retained W. K. Mathews (hereinafter referred to as Mathews) of Mathews Engineering Co. to make inquiries regarding the possible purchase of the N.R.K. Plant Equipment Co. (hereinafter referred to as N.R.K.) of Chicago, Ill. In this capacity, Mathews made several trips to Chicago and completed an extensive inventory of the equipment (notably the brazing equipment) owned by N.R.K. He also initiated preliminary negotiations toward petitioner's possible purchase of said equipment. In connection with Mathews' work petitioner took a trip to Chicago to look at some equipment. Petitioner testified that $90 was expended for that trip.

Petitioner acquired neither N.R.K. nor any of that company's inventory. Furthermore, petitioner did not make any firm offers for the purchase of said company or inventory.

In November 1963 petitioner left employment with B.M.C. Dean Research Corp., of which petitioner was the promoter and principal stockholder, was incorporated in the State of Missouri on December 12, 1963.

Dean Research Corp. and N.R.K. are in totally unrelated areas of business activity.

In 1963 petitioner paid $192.19 to Norman Worrell for the drafting of some ideas that petitioner had. This drafting expense had no connection whatever with Dean Research Corp.

On Schedule C of his 1963 income tax return, petitioner claimed the following as "Other Business Deductions":

| | | |
|---|---|---|
| (a) | Mathews Engineering Co. (consultant)_____ | $845.15 |
| (b) | Secretary of state (incorporating)_____ | 54.50 |
| (c) | Norman Worrell (drafting)_____ | 192.19 |
| (d) | Recorder of deeds_____ | 5.25 |
| (e) | Car mileage_____ | 90.00 |
| | Total _____ | 1,187.09 |

The Commissioner disallowed as business deductions all of the above items. Petitioner concedes that he is not entitled to deduct as a business expense items (b) and (d) above.

The issues as framed by the original pleadings in this case were (1) whether payments petitioner received from B.M.C. under the contract were wholly compensation for services or partly compensation for services and partly consideration for the transfer of property, and (2) whether certain of petitioner's expenditures constituted currently deductible business expenses rather than nondeductible capital expenditures. In his amended answer respondent for the first time raised the defense that petitioner was—

estopped under the doctrine of collateral estoppel from denying that the amounts received under the contract with Benson Manufacturing Company during the taxable years 1962 and 1963 constitutes compensation for services taxable as ordinary income.

OPINION

During the years 1961, 1962, and 1963, petitioner received payments under the contract with B.M.C. In *George A. Dean*, T.C. Memo. 1966-258, we decided that petitioner had failed to meet his burden of proving that any part of the payments he received under the contract during 1961 constituted consideration for his transfer of his stock in D.B.R., his interest in P.P.D., and his interest in the patents enumerated in the contract. In this proceeding petitioner claims that part of the payments he received under the contract in each of 1962 and 1963 constituted consideration for his transfer to B.M.C. of his stock in D.B.R., his interest in P.P.D., and his interest in the patents enumerated in the contract. Respondent urges that because of our decision in the prior proceeding petitioner is now collaterally estopped from denying that the amounts received under the contract during 1962 and 1963 constituted compensation for services.

The basic elements of the defense of collateral estoppel in Federal tax litigation were succinctly set forth by the Supreme Court in *Commissioner* v. *Sunnen*, 333 U.S. 591, 599–600 (1948), where it was stated that collateral estoppel—

must be confined to situations where the matter raised in the second suit is identical in all respects with that decided in the first proceeding and where the controlling facts and applicable legal rules remain unchanged.

As may be gleaned from the record in the prior case and the proceedings in this case, the ultimate matter or issue raised in this proceeding is identical with the ultimate matter or issue decided in the first proceeding, namely, whether the interpretation to be given the contract in light of the various facts and circumstances surrounding the contract's formation and subsequent amendment support the proposition that part of the payments under the contract were in consideration for the transfer of property.[1] It is not contended that the applicable legal rules have changed.

What is disputed by the parties is whether the controlling facts remain unchanged. Petitioner's main contention is that he now has at his disposal certain items of evidence which were not at his disposal in the prior proceeding. Then he goes on to argue that this evidence has an effect upon the controlling facts necessary to the determination of the ultimate issue. Respondent, on the other hand, argues that the new evidence petitioner seeks to introduce at the present proceeding was "available" to petitioner in the prior proceeding, see *Jacques R. Milberg*, 54 T.C. 1562, 1566 (1970), and that in any event such evidence fails to alter the controlling facts.

Thus, the questions we must face are, first, whether the evidence proffered by petitioner in this proceeding was "available" to him in the prior proceeding, and, second, if not "available," whether such evidence would tend to alter the controlling facts as they were found in the prior proceeding. In answering these questions we bear in mind that having pleaded an affirmative defense in his amended answer respondent has the burden of proving that defense. Rule 32, Tax Court Rules of Practice.

At trial, petitioner offered two types of evidence, substantial portions of which had not been offered at the prior proceeding. These two classes of evidence, petitioner's own testimony and certain documentary exhibits, had some bearing upon ascertainment of the facts and circumstances leading to the formation and subsequent amendment of the contract. However, if such new evidence had been "available" at the prior proceeding, then petitioner would be collaterally estopped from receiving this Court's decision on the merits of his

---

[1] Petitioner states that: "This proceeding involves a different contract than was involved in the prior trial. In the prior case it was stipulated that the contract of November 9, 1959 as modified by the contract of May 31, 1961 governed his employment and compensation in 1961. In this case it is stipulated that only the contract of May 31, 1961 governed the payments made in 1962 and 1963." We should note that in this case it is also stipulated that the document of May 31, 1961, modified or amended the contract of Nov. 6, 1959. On p. 9 of our Memorandum Findings of Fact and Opinion in the prior proceeding we clearly defined the contract we were interpreting as "the original document as amended." But, whether we speak of the contract as "the original contract as amended," "the contract of November 9, 1959 as modified by the contract of May 31, 1961," or "the contract of May 31, 1961," we are speaking of the same agreement. The agreement we interpreted in the first proceeding is identical both in form and in substance to the agreement we are asked to interpret here. Cf. *Commissioner* v. *Sunnen*, 333 U.S. 591, 601 (1948).

claim in the present proceeding. *Jacques R. Milberg, supra* at 1566. Thus, we must first determine what is meant by "available" as that term was used in the *Milberg* case.

On the basis of *Fairmont Aluminum Co.*, 22 T.C. 1377, 1383 (1954), affd. 222 F. 2d 622 (C.A. 4, 1955), certiorari denied 350 U.S. 838 (1955), we believe that any evidence which, by due diligence, could have been produced in a prior proceeding must be considered to have been "available" at such prior proceeding. Here, we may infer that petitioner's testimony as presented at the instant proceeding and as based upon his personal knowledge of the events surrounding the formation and subsequent amendment of the contract could have been elicited at the prior proceeding if due diligence had been observed. Similarily, because of petitioner's own admissions on the witness stand, it became clear that by due diligence he could have unearthed the documentary exhibits which allegedly affect the controlling facts of the ultimate issue herein.[2]

Petitioner's position is in effect a request for a new trial on the ground that he is now able to present certain evidence which he discovered subsequent to the first proceeding. See *Fairmont Aluminum Co., supra at* 1383–1384. But the inability of petitioner to present such evidence in the prior proceeding was the consequence of his failure to make a diligent effort to unearth the evidence for presentation at the first proceeding. As we stated in *Fairmont Aluminum Co., supra* at 1384:

We see no reason now for giving petitioner a further opportunity to litigate the same issues, particularly in view of the fact that the situation is largely one of * * * [his] own making.

Petitioner raises certain related questions concerning the proper method of proving the affirmative defense of collateral estoppel.

At trial respondent objected to the introduction of all but one of the documentary exhibits which allegedly would have effected a change in controlling facts on the ground that each of the exhibits

---

[2] Respondent examined petitioner with respect to the availability of the exhibits proffered as evidence. A typical exchange follows:

Q. Mr. Dean, you testified that * * * [your former counsel] did not ask you to look for these documents. If he had asked you to look for these documents, could you have obtained exhibits put in—marked as petitioner's Exhibit 22? Could you have obtained this document for him in the previous trial? If he had asked for it?

A. I certainly couldn't go to a file and pick it out. No.

Q. The document was in your possession though in some form like, such as it was in storage—it was in your records that were in storage, is that—

A. It must have been.

Q. It was in your possession. For the record, would you answer "yes" or "no."

A. Yes, it was in storage.

Petitioner testified to the same effect with respect to all but one of the other pertinent exhibits. However, that one exhibit could not possibly have affected the controlling facts. It was a picture of an electric fan which was covered by one of the relevant patents. It was apparently offered to give some reality to an otherwise abstract verbal description of the patent.

had been available at the prior proceeding. We postponed ruling upon respondent's objection until we had read the parties' briefs on the validity of such an objection. At the same time respondent failed to object to most of petitioner's testimony even though petitioner testified to certain facts which were not in evidence in the prior proceeding.

Seizing upon this failure by respondent to object to petitioner's testimony concerning these new facts, petitioner in his brief states that—

Respondent obviously realized that it was incumbent on him to object to any evidence which was available to the prior trial but not offered at the trial if he intended to rely on collateral estoppel in this trial. Otherwise the facts in the two cases obviously would not be the same. Respondent objected to all exhibits offered in this trial which had not been offered in the prior trial.

Continuing, petitioner argues that—

Since this [petitioner's] testimony was received without objection, it seems clear that the defense of collateral estoppel is waived and that the facts of the two cases are obviously not the same.

We cannot agree with petitioner's analysis.

There is more than one way to avail of the defense of collateral estoppel. For instance, the bar of collateral estoppel may be raised in a District Court by a motion for summary judgment *before* a full and complete second trial of an allegedly previously litigated matter or issue. See 6 Moore, Federal Practice, par. 56.17[52], fns. 9, 10 at 2664–2665 (2d ed. 1953). And in at least one case it was held that the bar of collateral estoppel might be raised by a motion for rehearing *after* a full and complete second trial of an allegedly previously litigated matter or issue. *Bennett* v. *Commissioner*, 113 F. 2d 837 (C.A. 5, 1940).

Here a middle road was followed. Petitioner was able to present his entire case, but our consideration of that case was conditioned upon the success or failure of respondent's affirmative defense. Unfortunately for petitioner, respondent's affirmative defense of collateral estoppel was adequately proved. Hence, we are precluded from considering petitioner's "newly discovered" evidence.

Petitioner also claims that respondent's collateral estoppel defense should be disallowed because respondent has allegedly failed to follow this Court's Rules of Practice. Petitioner argues that respondent's statement of facts (denominated "Requests for Findings of Fact" by respondent) violates Rule 35 (e) (3) [3] on the grounds that certain

---

[3] RULE 35. BRIEFS

(e) *Form and contents.*—All briefs shall contain the following in the order indicated:

 &ast; &ast; &ast; &ast; &ast; &ast; &ast;

(3) The party having the burden of proof shall set forth complete *statement of the facts* based upon the evidence. Each statement shall be numbered, shall be complete in itself, and shall consist of a concise statement of the essential fact and not a discussion or argument relating to the evidence or the law. Reference to the pages of the transcript

Footnote continued on following page.

of the statements have no bearing on the issue of collateral estoppel and that certain of the statements are legal conclusions and not statements of fact. Then he argues that—

If respondent is to persuade the court to ignore the merits of petitioners' claim and decide the case on a highly technical ground, respondent should, at the very least, prepare a statement of fact, complying with the rules of court, and from which the applicability of the defense is apparent.

Implicit in petitioner's argument seems to be the notion that technical defenses will be disallowed unless propounded in precise accordance with every jot and tittle of this Court's rules.

Petitioner's reasoning is unconvincing. First, the bar of collateral estoppel is not a "highly technical" defense as petitioner contends. It is, to the contrary, an offshoot of the principles of res judicata which in turn are founded upon strong "considerations of economy of judicial time and public policy favoring the establishment of certainty in legal relations." *Commissioner* v. *Sunnen, supra* at 597. It is a principle designed to maintain the integrity of the courtroom as a place where certainty in disputed matters may once and for all be established. Secondly, while some of respondent's requested findings of fact may be less relevant than others and while some of these same requested findings of fact may represent conclusions from that shadowy area where law mixes with fact, we do not believe that respondent has failed to meet the requirements of our Rules. In any event, a minor deviation from those requirements would have to be attributed to the "warm zeal" that respondent's position deserves, see ABA Canons of Professional Ethics, canon 15, and would not be a ground for complete rejection of respondent's affirmative defense.

For the taxable year 1963 petitioner claimed certain business expenses which respondent disallowed. Petitioner summarized these additional expenses as engineering, drafting, and travel expenses incurred while he was looking into the advisability of purchasing a plant in Chicago. In fact we do not know whether the drafting expenses were connected to the contemplated plant purchase. Also, petitioner's testimony that $90 was actually spent for travel expenses was not supported by specifics. But even if petitioner's characterization of the expenses were true, we would have to hold that such expenses in respect of a preliminary search for a potential business opportunity would not qualify for deductions under sections 162, 165, or 212,[4]

Footnote continued from previous page.

or the exhibits relied upon in support thereof shall be inserted after each separate statement.

*If the other party disagrees* with any or all of the statements of fact, he shall set forth each correction which he believes the evidence requires and shall give the same numbers to his statements of fact as appear in his opponent's brief. His statements of fact shall be set forth in accordance with the requirements above designated.

[4] Petitioner does not rely on any particular Code section. If he had made reference to the Internal Revenue Code, we assume that he would have relied upon these cited sections.

I.R.C. 1954. See, e.g., *Stanton* v. *Commissioner*, 399 F. 2d 326, 329 (C.A. 5, 1968), affirming a Memorandum Opinion of this Court; *Weinstein* v. *United States*, 420 F. 2d 700, 701 (Ct. Cl. 1970); *Werner Abegg*, 50 T.C. 145, 153 (1968), affd. 429 F. 2d 1209 (C.A. 2, 1970), certiorari denied 400 U.S. 1008 (1971); *Morton Frank*, 20 T.C. 511 (1953).

*Decision will be entered for respondent.*