OPINION Petitioner seeks to avoid the tax on certain distributions out of earnings and profits paid in cash by Dietzsch Pontiac-Cadillac during the taxable year 1967. In support of this position, petitioner relies on section 305. While the distributions in question were made in cash, petitioner contends that by reason of a preexisting agreement between petitioner and General Motors, whereby petitioner was obligated to apply any dividends to the purchase of class A stock from General Motors and to exchange such class A stock for class B stock of the distributing corporation, the distribution should be treated as a nontaxable stock dividend as defined in section 305(a). The respondent has pleaded collateral estoppel predicated upon the decision of the Court of Claims in Dietzsch v. United States, supra, with respect to the taxable years 1965 and 1966. For collateral estoppel to apply, this Court must find that the facts in the decided case, as well as the law, are the same as those in the pending case. In order to make such determination, it is necessary first to decide whether the facts of the pending case differ materially from the earlier decision. James T. Shiosaki, 61 T.C. 861 (1974). The case was submitted to this Court upon the basis of the same stipulation of facts which constitute the record for the decision of the Court of Claims in Dietzsch v. United States, supra. The only additional evidence presented consisted of testimony that petitioner could have borrowed the funds from the banks, but was under compulsion to accept the so-called “Dealer Investment Plan” developed by General Motors. It was that or nothing. The same evidence was available to the petitioner at the time of the trial in the Court of Claims. See, e.g., George A. Dean, 56 T.C. 895 (1971). For personal reasons, the petitioner elected not to testify in the prior trial. Nevertheless the Court of Claims took into consideration “the fact that the form of the transaction was in no way his [petitioner’s] choice.” Dietzsch v. United States, supra at 1348. The Court of Claims regarded this as immaterial. It is thus clear that except for the fact we are here dealing with the taxable year 1967, and the Court of Claims dealt with the taxable years 1965 and 1966, there are no new facts upon which the petitioner might rely in order to avoid the effect of the Court of Claims’ decision. The obligation on the petitioner to use any dividends received from Dietzsch Pontiac-Cadillac for the purchase of the class A stock from General Motors and to convert such stock into class B stock was entered into in the taxable year 1964, and remained in full force and effect throughout the taxable year 1967. Even the formula fixing the amount of the cash dividends to be paid had been agreed upon at that time. Petitioner does not seek to set aside those agreements. As this record shows, in accordance with the “Dealer Investment Plan,” petitioner ended up as sole owner of the stock of Dietzsch Pontiac-Cadillac within the prescribed time frame. The fact that petitioner did not seek to strike a “better bargain,” because of his eagerness to obtain the dealership, is of no significance. Similarly, the provision of the internal revenue laws which petitioner seeks to invoke — namely section 305 — is the same provision which petitioner relied on in the case before the Court of Claims. There has been no change in the law. In the absence of such change, and since the facts are the same, petitioner is estopped from relitigating this issue. Richmond, Fredericksburg & Potomac Railroad Co., 62 T.C. 174 (1974), affd. 528 F.2d 917 (4th Cir. 1975); Hercules Powder Co. v. United States, 337 F.2d 643 (Ct. Cl. 1964). While this Court would not be inclined to reach any different result on the merits than was reached by the Court of Claims in its decision, we need not consider that question. Decision will be entered for the respondent.