VENANCIO A. BAGNOL AND JUANA T. BAGNOL, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Bagnol v. Commissioner
Docket No. 8370-76.
United States Tax Court
T.C. Memo 1978-240; 1978 Tax Ct. Memo LEXIS 276; 37 T.C.M. (CCH) 1038; T.C.M. (RIA) 78240; June 27, 1978, Filed *276 Held, petitioner is not entitled to carry forward his distributive share of a 1968 partnership loss on his 1974 individual return. Held further, petitioner relied upon the cost of repairs method to establish the amount of a casualty loss. However the repairs were never made and, accordingly, the deduction is disallowed. Held further, proof of the fair rental value of petitioner's home, not representing an out-of-pocket expense, is insufficient to establish a home office deduction. Held further, expenses incurred in searching for or acquiring new investments are not deductible under secs. 162 and 212. Venancio A. Bagnol, pro se. Bryce A. Kranzthor, for the respondent. STERRETT
MEMORANDUM FINDINGS OF FACT AND OPINION STERRETT, Judge: Respondent determined a deficiency in petitioners' Federal income tax for the 1974 calendar year in the amount of $ 1,099.76. Due to concessions [1] by parties the remaining issues for decision are as follows: (1) Whether petitioners are entitled to deduct on their 1974 Federal income tax return their distributive share of a partnership loss, in the amount of $ 5,695.33, incurred by the partnership during its 1968 taxable year; (2) Whether petitioners *277 incurred a casualty or theft loss in the amount of $ 2,559 on rental property; and (3) Whether petitioners are entitled to a home office deduction in the amount of $ 1,155. FINDINGS OF FACT Some of the facts have been stipulated and are so found. The stipulation of facts, together with the exhibits attached thereto, are incorporated herein by this reference. Petitioners Venancio A. and Juana T. Bagnol, husband and wife, resided in San Francisco, California at the time they filed their petition herein. They timely filed a joint Federal income tax return for the 1974 taxable year with the internal revenue service center, Fresno, California. Hereinafter, for convenience, Venancio A. Bagnol will be referred to as petitioner. On February 24, 1965 petitioner, his brother and his sister contributed $ 7,000, $ 6,500 and $ 4,000, respectively, to organize a partnership *278 to engage in the business of owning, managing and investing in real estate. In 1965 the partnership purchased an apartment building in Los Angeles for $ 142,000, paying $ 16,000 and incurring first and second trust deeds in the amount of $ 126,000. The partnership sustained annual losses and petitioner's distributive share of such losses [2] are as follows: Year
Partnership Loss
Petitioner's Share
1966
$ 10,974.27
$ 3,658.09
1967
14,803.27
4,934.43
1968
17,086.00
5,695.34 In 1969 the partnership could not meet its operating expenses and the first trust deed holder foreclosed on the property. For the taxable years 1967, 1968 and 1969 petitioner did not claim his aforesaid distributive share of the partnership losses as he was an employee of the Philippine counsulate in the United States and, therefore, his income was tax exempt. See section 893, I.R.C. 1954. For the 1972 and 1973 taxable years petitioner reported no taxable income. In 1974, when petitioner realized that he would have taxable income, *279 he deducted his 1968 distributive share of the partnership loss. In March 1958, petitioner purchased a house in Los Angeles, California, for $ 18,000. He resided with his family in said residence until 1969 when he moved to San Francisco. In 1974 petitioner rented the house and, sometime between May and August of 1974, the tenant removed, without petitioner's permission, the underground sprinkler system, fence, porch railing and the landscaping around the house. With the exception of the landscaping the other removed items were included with the house when purchased in 1958. Petitioner from 1958 to 1969 had installed the landscaping. At date of trial, petitioner has listed the house for sale. He has not expended any money to replace the items removed by his former tenant although he has received estimates of cost totalling $ 3,799.20. In 1974 petitioner actively inquired and attempted to acquire investment quality real estate. He worked, approximately, 3 hours per day on such real estate dealings and used one room of his nine room house for his office. Additionally he made 15 or more trips, totalling 2,000 miles, in connection with his real estate dealings. He had not established *280 himself as being in the business of buying and selling real estate. On his amended petition petitioner claimed, for his 1974 taxable year, the following deductions. Partnership loss
$ 5,695
Casualty losses
2,584 [3]
Home office use
1,155 [4]
Respondent by answer to the amended petition denied that petitioner incurred a deductible partnership loss, casualty losses, and home office expenses in the above amounts. OPINION 1. Partnership Loss
Although the record does not indicate, it appears that upon foreclosure of the *281 partnership property in 1969 or 1970 the first and second trust deeds were extinguished and the partnership dissolved. Therefore respondent contends that petitioner incurred a gain, and not a loss, upon dissolution of the partnership. To the extent that petitioner was relieved of his share of the partnership liabilities, he is treated as receiving a distribution of money. Section 752(b). The distribution exceeded his adjusted partnership basis and under section 731 petitioner recognized a gain in the amount of this excess. [5] However we note, as previously stated, the alleged gain was incurred in either 1969 or 1970 while petitioner seeks to deduct his distributive share of the 1968 partnership loss on his 1974 joint return. Respondent has not put in issue, in his notice of deficiency or pleadings, this matter of gain and therefore we will not consider it. Moreover assuming petitioner incurred a net operating loss in 1968 attributable to his share of the 1968 partnership loss, under section 172 he is entitled to carry forward such loss for a five-year period. [6] Section 172(b). This fiveyear period expired with petitioner's 1973 taxable year. Deductions are a matter of legislative *282 grace and, as there is no provision applicable to allow such deduction for the year in issue, we must deny the deduction. New Colonial Co. v. Helvering,292 U.S. 435 (1934). 2. Casualty Loss
Respondent asserts on brief that the damage caused by petitioner's tenant upon the removal of the sprinkler system, fence, porch railing and landscaping was not a casualty loss within the meaning of section 165(c) and the regulations thereunder. Assuming, arguendo, that a casualty loss occurred, we note that there are two acceptable methods to determine the amount of such deductible loss attributable *283 to property used in a trade or business or held for the production of income, viz.: (1) The decrease in the fair market value of the identifiable property damaged or destroyed (assuming the fair market value before the casualty is greater than its adjusted basis) and (2) the cost of repairs. Section 1.165-7(a)(2), 7(b)(1) and (2), Income Tax Regs.
Under the aforenoted regulation, section 1.165-7(a)(2)(ii), the cost of repairs method is acceptable: [If] the taxpayer shows that (a) the repairs are necessary to restore the property to its condition immediately before the casualty, (b) the amount spent for such repairs is not excessive, (c) the repairs do not care for more than the damage suffered, and (d) the value of the property after the repairs does not as a result of the repairs exceed the value of the property immediately before the casualty. (Emphasis supplied) Herein petitioner relies upon this method and has introduced in evidence estimates of $ 3,799 to replace the removed items. Moreover we recognize his candor in reducing such estimates to what he believes to be the appropriate replacement cost with respect to the value of the dollar in 1974, the year of the alleged casualty. *284 However the cost of repairs method is acceptable only if the repairs and expenditures were actually made. Lamphere v. Commissioner, 70 T.C.     (May 31, 1978). Here petitioner admits that he has not expended any money to replace the removed items and, again, we must deny the deduction. [7]
3. Home Office Use
We have previously found that for the year in issue petitioner attempted to acquire investment quality real estate. Pursuant thereto he traveled 2,000 miles and used one room of his nine room home almost exclusively as his office. His pro rata "home office use" deduction (see footnote 4, supra) is based, primarily, upon the fair rental value of his house. However this test, of fair rental value, is insufficient to sustain the deduction. In order to establish the deduction, petitioner has the burden of proving, among other things, the total expense incurred in operating his home, i.e.: monthly mortgage payments, real estate taxes, etc. Gino v. Commissioner,60 T.C. 304, 314 (1973), revd. on other grounds, 538 F.2d 833 (9th Cir. 1976), cert. denied 97 S.Ct. 490 (Nov. 29, 1976). *285 Proof of the fair rental value of his home not representing an out-of-pocket expense, is inappropriate and will be disregarded. Moreover, it is well settled that expenses incurred in searching for or acquiring new investments are not deductible under section 162 or 212. Weinstein v. United States,420 F.2d 700, 701 (Ct. Cl. 1970); Frank v. Commissioner,20 T.C. 511, 513-14 (1953). Therefore we again must disallow, in full, petitioner's claimed deduction of $ 1,155. Decision will be entered under Rule 155. Footnotes
1. Respondent has conceded that petitioners are entitled to a casualty loss deduction of $ 125, less the $ 100 floor, attributable to the breakage of three windows in their personal residence. Moreover petitioners' medical deduction, disallowed by respondent in the amount of $ 1,044 should be disallowed in the amount of $ 82.↩
2. Although the partnership agreement provided for distribution of profits or losses based upon the partners' respective original investments, the partnership returns equally divided the entity's losses.↩
3. Rental Property
Total estimated cost to replace items
$ 3,799
Less: 10 percent inflation rate for
3 years
1,140
Net estimated cost in 1974 dollars
2,659
Less: Statutory floor
100
Net casualty loss
2,559
$ 2,559
Personal property
Breakage to 3 windows
125
Less: Statutory floor
100
25
25
TOTAL
$ 2,584
We note the $ 100 floor is not applicable to losses incurred on rental property and that respondent has conceded that petitioner is entitled to the $ 25 casualty loss deduction. ↩
4. Home office use
Rental value of house - $ 600 per month
$ 7,200
Utilities
456
Telephone
132
$ 7,788
1/9 of $ 7,788 =
$ 855 We note that 1/9 of $ 7,788 = $ 865.33
*↩
Travel expense (2,000 miles @ 15 cents per mile)
300
TOTAL HOME OFFICE
$ 1,155
5. Respondent contends that as of 12/31/68 petitioner's adjusted partnership basis was as follows: Initial contributed capital
$ 7,000.00
Less: Petitioner's share of
losses for 1965-1968
15,546.10
Plus: Petitioner's share of partnership
liabilities as of 12/31/68 (40
percent of $ 68,840.51)
27,536.20
Basis as of 12/31/68
$ 18,990.10
Thus upon foreclosure petitioner was relieved of his share of the partnership liabilities and is treated as receiving a distribution of money of $ 27,536.20. Sec. 752(b). ↩
6. Seven years for net operating losses incurred in taxable years ended after December 31, 1975. Section 172(b)(1)(B).↩
7. No evidence was presented with respect to the before and after fair market value of the property.↩