JOHN C. and HELEN M. BICK, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Bick v. Commissioner
Docket No. 10963-76.
United States Tax Court
T.C. Memo 1978-390; 1978 Tax Ct. Memo LEXIS 122; 37 T.C.M. (CCH) 1591; T.C.M. (RIA) 78390; September 28, 1978, Filed John C. Bick, pro se. Robert E. Dallman, for the respondent. WILBUR
MEMORANDUM FINDINGS OF FACT AND OPINION WILBUR, Judge: Respondent determined a deficiency in petitioners' Federal income taxes for the taxable year 1973 in the amount of $ 652.76. Because of concessions, the sole issue remaining for our determination is whether petitioners may deduct, under sections [1] 162, 165, or 212, food, lodging, and travel expenses incurred in investigating possible investment opportunities in Europe. FINDINGS OF FACT Some of the facts have been stipulated. The stipulation of facts and attached exhibits are incorporated herein by this reference. Petitioners are John C. Bick (hereinafter John) and Helen M. Bick, *124 husband and wife, who resided in Illinois at the time they filed the petition in this case. They timely filed a joint Federal income tax return for the taxable year 1973. Dividends constituted the majority of their reported income, with the remainder attributable to interest. They reported a capital loss carryover from taxable year 1969 but no capital gains or losses for the current year.On the return, John listed as his occupation "Certfd. Ill. Tree Farm #350." Since 1930 petitioners have accumulated a substantial investment portfolio. During 1973, their investments were in intangible personal property such as stocks and bonds. Their only real property was a home on a 10.25 acre certified tree farm and game preserve. During the early 1970's petitioners decided to consider the possibility of overseas investments. John considered two potential investments. One was a residential dwelling complex in Lugano, Switzerland suggested by a Boston based investment advisory organization which also gave him some literature on the complex.The other was real property and vinelands owned by his father's family in or near Hofald, West Germany. In accordance with his general policy of *125 personally investigating major investment opportunities, John decided to travel to Europe in 1973 to inspect these two potential investments. He traveled by train from his home in Illinois to Massachusetts, where he contacted an investment advisory service and received information with respect to the Swiss residential dwelling complex. Then he went to New York, where he boarded a freighter to Europe. In Europe, John first traveled to the site of the West German real property and vinelands. His purpose for this trip was to determine its investment quality rather than for personal purposes. However, when he arrived in West Germany he possessed only a general awareness of its investment potential. He was unaware of the numbers of acres and price per acre of the land, and did not know whether land would be available for purchase. Also, he was not knowledgeable about vineyards and their operation. John spent a portion of the 5 or 6 days he was in Germany looking at the property and discussing its purchase with knowledgeable individuals in the area. He decided to defer immediate investment and to wait until such time as title questions with respect to the land could be resolved *126 to his satisfaction. During 1973 he did not abandon the possibility of investing in this property. John next visited the site of the Swiss residential housing complex. During the 4 or 5 days he spent here, he discussed the venture with knowledgeable individuals in the locale. Eventually he determined it to be an unacceptable investment. John returned home from Europe via England. The entire trip consumed 66 days. Except for the periods in West Germany and Switzerland, this period was spent either traveling or awaiting transportation. Petitioners during 1973 neither owned nor invested in either the West German or Swiss properties John inspected. On petitioners' 1973 joint Federal income tax return they deducted $ 1,595 for property management expenses representing the expenditures John incurred on this European trip. In fact, he spent a total of $ 2,593 on the trip. ULTIMATE FINDINGS OF FACT John's European travels were not made in connection with petitioners' trade or business, and did not constitute a "transaction" for purposes of section 165(c)(2). OPINION The sole issue before this Court is petitioners' claim to a deduction for the $ 2,593 spent by John while *127 traveling to and from Europe to inspect potential investment opportunities located in Switzerland and West Germany. Petitioners originally claimed a $ 1,595 deduction on their 1973 Federal income tax return. However, at trial the parties orally stipulated that a total of $ 2,593 was in fact spent, and petitioners amended their petition to claim a refund based on a deduction in excess of that originally claimed. This was done with respondent's agreement and with the Court's permission. See section 6512; Pfalzgraf v. Commissioner,67 T.C. 784, 787 (1977). Deduction of these travel expenses is sought, in the alternative, on the basis of sections 162, 165, and 212. Primary reliance is placed on section 165(c)(2) which authorizes a deduction for losses incurred by individuals and not compensated for by insurance or otherwise which are "incurred in any transaction entered into for profit." While we agree with petitioners as to the existence of a profit motive for the trip, we must conclude that John's activities do not constitute a "transaction" as that term is used in the *128 statute.We noted in Seed v. Commissioner,52 T.C. 880, 885 (1969), that "the phrase 'a transaction entered into for profit' surely means something more than the mere casual preliminary investigation of a prospective business or investment." John's activities here were just that; a preliminary and general investigation of prospective investments. When he began his trip to Europe, he possessed some, although apparently limited information about the Swiss investment opportunity, and very little information about the German opportunity. The purpose of the trip was to gather information. The record clearly demonstrates that his activities amounted to an initial investigatory search of a general nature that is insufficient to constitute a "transaction." See Brown v. Commissioner,40 T.C. 861, 869-70 (1963), and Frank v. Commissioner,20 T.C. 511 (1953). [2] See also Dean v. Commissioner,56 T.C. 895, 902-03 (1971). *129 Nevertheless, petitioners insist that respondent has conceded their right to the deductions in issue by the position he has taken in Rev. Rul. 57-418, 1957-2 C.B. 143, and amplified by Rev. Rul. 77-254, 1977-30 I.R.B. 6. [3] In Rev. Rul. 57-418, respondent stated than an individual's investigatory expenses were deductible under section 165(c)(2) "only where the activities are more than investigatory and the taxpayer has actually entered into a transaction for profit and the project is later abandoned." In Rev. Rul. 77-254 respondent recognized that an individual also could deduct, under section 165(c)(2), expenses incurred in the unsuccessful attempt to acquire a specific business as in Seed v. Commissioner,supra. Neither ruling assists petitioners, for the activities before us simply involved a general preliminary investigation of potential investments. See O'Donnell v. Commissioner,62 T.C. 781 (1974), affd. without published opinion 519 F.2d 1406 (7th Cir. 1975). Thus, petitioners are not entitled to a deduction under section 165(c)(2). *130 Nor are petitioners entitled to a deduction under either sections 165(c)(1), or 162(a). [4] Both sections require that the taxpayers be engaged in an existing "trade or business" in connection with which the expenses to be deducted are incurred. Frank v. Commissioner,supra.Whether a particular activity constitutes a trade or business is generally a question of fact. Higgins v. Commissioner,312 U.S. 212 (1941); O'Donnell v. Commissioner,supra at 786. On the record before us, we must conclude that John's trip to Europe was connected with petitioners' iinvestment activities which, of course, cannot constitute a trade or business. Whipple v. Commissioner,373 U.S. 193 (1963); Higgins v. Commissioner,supra.
*131 John listed his occupation on the 1973 Federal income tax return as "certfd. Ill. tree farm." Although he mentioned some of his previous business experience, there is nothing to indicate a relationship between it and either of the investment opportunities in question here. Petitioners have shown no activities sufficient to constitute a trade or business which is even remotely connected with either the vinelands operation or the residential housing complex. Their mere search for new investments clearly does not constitute a trade or business. Finally, we conclude that petitioners cannot qualify for a deduction under section 212. [5]To be deductible under that section, expenses must be related to either property or a property right in which the taxpayer has an existent interest. [6]Frank v. Commissioner,20 T.C. 511 (1953); Beck v. Commissioner,15 T.C. 642 (1950), affd. per curiam 194 F. 2d 537 (2d Cir. 1952), cert. denied 344 U.S. 821 (1952); Fleischer, "The Tax Treatment of Expenses Incurred in Investigation for a Business *132 or Capital Investment," 14 Tax L. Rev. 567, 580-84 (1959). Petitioners had no interest during 1973 in either of the two investment opportunities John inspected in Europe. Petitioners' position is virtually identical to that of the taxpayers in Weinstein v. United States,190 Ct. Cl. 437, 420 F. 2d 700 (1970), where the Court stated: *133 [A] proprietary or possessory type interest in the income-producing asset is prerequisite to the deductibility of related expenditures * * *. * * *
[Plaintiff's] expenditures were for the purpose of investigating * * * new investments. Such expenditures were in no meaningful sense "for the production or collection of income" (from an existing property right, as section 212(1) has been interpreted); nor were they "for the management, conservation, or maintenance of property held for the production of income." * * * [190 Ct. Cl. at 440, 420 F. 2d at 702.] As Weinstein also notes, the type of investigatory expenses incurred by petitioners here relates exclusively to the new investment opportunities rather than to the maintenance of petitioners' present investment portfolio. To allow for concessions on other issues, Decision will be entered under Rule 155. Footnotes
1. All section references are to the Internal Revenue Code of 1954 as amended and in effect for the year in issue, unless otherwise noted.↩
2. The rules in this area are not without problems. See Fleischer, "The Tax Treatment of Expenses Incurred in Investigation for a Business or Capital Investment," 14 Tax L. Rev. 567, 597 (1959); Wilberding, "An Individual's Business Investigation Expenses: An Argument Supporting Deductibility" 26 Tax Lawyer 219, 242-43 (1973); Note, "Federal Income Tax Treatment of Business and Employment Investigatory Expenses," 56 Minn. L. Rev. 1157, 1195↩ (1972). Nevertheless, the record before us does not present the occasion for a review of these problems.
3. Revenue Rulings do not constitute precedents binding on this Court.However, we consider an analysis of these rulings appropriate since respondent apparently concedes petitioners' entitlement to a deduction if either ruling's terms are met.↩
4. Sec. 165(c)(1) states: (c) LIMITATION ON LOSSES OF INDIVIDUALS.--In the case of an individual, the deduction under subsection (a) shall be limited to-- (1) losses incurred in a trade or business; Sec. 162(a) states, in pertinent part: (a) IN GENERAL.--There shall be allowed as a deduction all the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business * * *.↩
5. SEC. 212. EXPENSES FOR PRODUCTION OF INCOME.
In the case of an individual, there shall be allowed as a deduction all the ordinary and necessary expenses paid or incurred during the taxable year-- (1) for the production or collection of income; (2) for the management, conservation, or maintenance of property held for the production of income; or (3) in connection with the determination, collection, or refund of any tax. ↩
6. We realize that the "present interest" rule has received considerable criticism from scholarly commentators. Fleischer, supra; Friedman, "Expenses of Investigating Prospective Investments are Rarely Deductible," 9 Taxation for Accountants, 121 (1972); Wilberding, supra; Note, supra; Note, "Investigation Costs: An Analysis and a Proposal," 41 Temple L.Q. 81↩ (1967). On the facts before us, nothing would be gained by a review of the defects in the long-established rules in this area.