LOUIS P. CONTINI AND DIANE E. CONTINI, PETITIONERS *V.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 1563–78.    Filed March 19, 1981.

Louis P. Contini, pro se.
*William F. Garrow*, for the respondent.

PARKER, *Judge*: Respondent determined a deficiency of $501 in petitioners' Federal income taxes for the year 1975. The issues for decision are:

(1) Whether $2,000 paid in 1975 for materials dealing with establishment of a family trust is deductible by petitioners under section 212[1] or section 162; and

(2) Whether $51 paid in 1975 for tax materials is deductible by petitioners under section 212 (3) and the regulations thereunder.

### FINDINGS OF FACT

Some of the facts have been stipulated. The stipulation of facts and the exhibits attached thereto are incorporated by this reference.

Petitioners Louis P. Contini and Diane E. Contini resided in St. Clair Shores, Mich., at the time they filed their petition in this case. They timely filed a joint Federal income tax return for 1975. Petitioner Diane E. Contini is a party to this proceeding solely because she filed a joint return with her husband, and the term "petitioner" will hereinafter refer to Louis P. Contini.

During all relevant times herein, petitioner was employed as an engineer. Throughout 1975, he worked for Giffels Associates, Inc., in Detroit, Mich., and his wife was a homemaker. Aside from petitioner's $20,622.33 salary from Giffels, the only other

---

[1]Unless otherwise indicated, all section references are to the Internal Revenue Code of 1954 as amended and in effect during the taxable year here involved.

income reported on their 1975 joint return was $7.80 of interest income. Their only property holdings during 1975 were some jewelry and their family home.

On October 6, 1975, petitioner paid the sum of $2,000 to obtain certain undescribed written materials and services from Educational Scientific Publishers (hereinafter ESP). At ESP's insistence, this transaction was conducted through an entity, entitled the "Louis P. Contini Educational Trust," established by petitioner as grantor-creator and two ESP representatives, William L. Comer and Patricia J. Tweedy, as acceptors-trustees. Accordingly, petitioner made his check for ESP materials payable to the "Louis P. Contini Educational Trust," and he executed a document entitled "Declaration of Trust of this Express Equity Pure Trust."

The declaration, dated October 7, 1975, provided, in part, as follows:

THE GRANTOR hereby constitutes and appoints the above designated Trustees to be in fact TRUSTEES of the TRUST hereby created and established. THE GRANTOR for and in consideration of the objects and purposes herein set forth does hereby endow, grant, give and deliver the cash sum of $2000.00 to the Trustees hereto who acknowledge receipt of said endowment IN TRUST, and who are to hold legal title to said endowment in joint tenancy and not as tenants in common and to collectively act by virtue of this covenant as a Board of Trustees to convey and deliver the herein above mentioned endowments, grants and or gifts in the name herein above designated to THE U.S.E.—A TRUST EDUCATIONAL TRUST who as a participant in Educational Scientific Publishers (A TRUST's) Educational Programs will for the appropriate endowment secure E.S.P.'s (A TRUST's) EDUCATIONAL PROGRAM for the exclusive use only of the GRANTOR-CREATOR of THIS TRUST to facilitate his/her EDUCATION and in so doing accomplish the

Trustee's Declaration of Purpose
of This Express Equity Pure Trust

which is to PARTICIPATE IN EDUCATIONAL SCIENTIFIC PUBLISHERS (A TRUST's) EDUCATIONAL EFFORT WHOSE PURPOSE IS TO PROPAGATE THE DEVELOPMENT OF THE EDUCATIONAL PROCESSES WHEREVER LEARNING OCCURS.

THE TRUSTEES OF THIS TRUST by their resolution of purpose may perform and function on behalf of any individual, group or combination of individuals, severally or collectively.

THIS TRUST is authorized to provide Itself with funds by ITS Trustees from endowments accruing to IT for ITS participation in Educational Scientific Publishers (A Trust's) "copyrighted" Educational Program, "the exclusive licensee of the National Pure Trust Service Mark, reg. no. 608, 111, United States Patent Office."

THIS—FORM 1, A Trust's "Educational Endowment is accepted upon the conditions of The Notice of Disclaimer that must be executed (4 copies) by the parties hereto who individually and collectively acknowledge said conditions to be an Addendum that attaches hereto and by reference becomes a part hereof."

This document was a printed form with certain blank spaces that were filled in. The only purpose of the "Louis P. Contini Educational Trust" was to order the program or packet of materials. The record does not show what written materials or services petitioner was entitled to receive for his $2,000 payment. Other than the $2,000 check, no property or money was ever transferred to the "Louis P. Contini Educational Trust."

In November or December of 1975, petitioner received from ESP an instructional text and some forms for rearranging property and forming family trusts. He received some additional materials from ESP subsequent to 1975, possibly including memoranda on tax laws and pamphlets on family estate planning, business planning, accounting techniques, and preparation of tax returns. ESP issued some pamphlets at seminars that it periodically conducted for purchasers of ESP materials. Petitioner attended at least one such seminar sometime after 1975. The purchase price may have entitled petitioner to legal representation in administration, property distribution, and tax matters involving family trusts. However, there is no evidence in the record as to ESP's terms for providing such representation or as to the extent to which petitioner received such assistance. In fact, other than the family trust documents and information, the Court cannot determine what petitioner received for his $2,000 payment.

During 1976, petitioner, using the materials he had purchased from ESP, formally created a family trust, entitled the "Louis P. Contini Family Estate (A Trust)." Petitioner apparently transferred to that trust the family home, some jewelry, and rights to his services and the income therefrom.

During 1977, petitioner supplemented his employment as an engineer by establishing a professional corporation for the practice of engineering. In addition, sometime after 1975, petitioner purchased a house for rental purposes. There is no evidence, however, showing (1) the relationship, if any, of the professional corporation and the rental property to ESP materials or to the "Louis P. Contini Family Estate (A Trust)," or (2)

the amount or timing of any income that these activities may have generated.

On December 8, 1975, Mr. Contini paid to L. E. Fritts, a friend and coworker at Giffels, $51 as his one-half share of the cost of certain tax books that they purchased jointly. These books were published by one of the major publishing houses and not by ESP. The books consisted of an "Executive Tax Desk Manual" and a "Federal Tax Course" dealing with tax laws and how to file tax returns and were used by petitioners to prepare their 1975 tax return.

On their 1975 joint Federal income tax return, petitioners claimed a deduction for the $2,051 under miscellaneous deductions with the following explanation:

> Educational cost + materials . . . costs to maintain & conserve assets and/or minimize taxes (I.R.C. 212)

This deduction was disallowed in full by respondent in the statutory notice of deficiency.

## OPINION

The first issue for decision is whether the sum of $2,000 paid in 1975 for materials dealing with establishment of a family trust is deductible by petitioners under section 162 or section 212. Petitioners argue that the $2,000 is deductible as an expense under section 212(1) for the production or collection of income, under section 212(2) for the management, conservation, or maintenance of property held for the production of income, under section 212(3) for the determination of taxes, or under section 162 as educational expenses to maintain or improve skills required by petitioner-husband in his trade or business as an engineer or to meet express requirements to retain his job as an engineer. Petitioners have the burden of proving their entitlement to this deduction. *Welch v. Helvering*, 290 U.S. 111 (1933); Rule 142(a), Tax Court Rules of Practice and Procedure.

Sections 1.211–1 and 1.212–1(e), Income Tax Regs., provide that a deduction otherwise allowable under section 212 shall not be allowed if it falls within section 262 dealing with nondeductible personal, living, and family expenses. In addition to that limitation, a deduction under section 212(1) or 212(2) is allowable only for expenditures made for the production or collection of taxable income from an existing property right, or for the

management, conservation, or maintenance of property present-ly held for the production of taxable income. Sec. 1.212–1(a)(1), Income Tax Regs. There is a basic distinction between allowing deductions for expenses in connection with taxable income or income-producing property in which one already has an existing interest or right, on the one hand, and expenses incurred in an attempt to obtain income by the creation or acquisition of some new interest, on the other hand. *Frank v. Commissioner*, 20 T.C. 511, 514 (1953); *Beck v. Commissioner*, 15 T.C. 642, 670 (1950), affd. per curiam 194 F.2d 537 (2d Cir. 1952), cert. denied 344 U.S. 821 (1952).

Section 1.212–1(g), Income Tax Regs., provides:

(g) Fees for services of investment counsel, custodial fees, clerical help, office rent, and similar expenses paid or incurred by a taxpayer *in connection with investments held by him* are deductible under section 212 only if (1) they are paid or incurred by the taxpayer for the production or collection of income or for the management, conservation, or maintenance of *investments held by him* for production of income; * * * [Emphasis added.]

Thus, a proprietary or possessory interest in an income-produc-ing asset is a prerequisite to the deductibility of related expenditures under section 212(1) or section 212(2). Sec. 1.212–1(g), Income Tax Regs.; *Weinstein v. United States*, 190 Ct. Cl. 437, 420 F.2d 700, 702 (1970).

At the time petitioner purchased the ESP materials in 1975, the only assets that he held were some jewelry and his family home. He testified that he wanted to keep the jewelry within his family to provide an income-producing asset for his children in the future, that he held his personal residence so that it would produce income on its ultimate sale, and that he purchased the trust materials to further these purposes. However, petitioner's intention to put the jewelry in trust for the future benefit of his children and to hold his home in trust for ultimate resale are purely personal purposes. Sec. 262. Moreover, there is no evidence showing that petitioners held either asset for any investment purposes, as required by section 212.[2] The record at

---

[2]Petitioners' reliance on our decisions in *Bagley v. Commissioner*, 8 T.C. 130 (1947), and *Abrams v. Commissioner*, T.C. Memo. 1964–256, is misplaced. Based on those cases, petitioners argue that expenses of obtaining investment advice, such as the advice contained in the trust materials herein, are deductible with respect to new investments as well as to existing investments. In those cases, however, the taxpayers held existing investments in the stock market and in a corporation, respectively, before they made the expenditures which they

best indicates that petitioners merely transferred their existing jewelry and family home to a family trust sometime after 1975 and that they used the trust materials simply to change the manner in which they held their existing property. Petitioners did not create any new source of taxable income, did not collect any earned but unrealized income, and did not produce any income from their existing property holdings.

As for petitioners' family home, section 1.212–1(h), Income Tax Regs., provides different treatment for expenditures in connection with a personal residence and expenditures in connection with a house held for rental purposes:

> (h) *Ordinary and necessary expenses paid or incurred in connection with the management, conservation, or maintenance of property held for use as a residence by the taxpayer are not deductible.* However, ordinary and necessary expenses paid or incurred in connection with the management, conservation, or maintenance of property held by the taxpayer as rental property are deductible even though such property was formerly held by the taxpayer for use as a home. [Emphasis added.]

Expenses in connection with the family home are clearly not deductible. The fact that petitioners purchased a second house for rental purposes sometime after 1975 does not alter our conclusion that they purchased the trust materials for purely personal reasons. Furthermore, petitioners introduced no evidence showing whether the rental house was in any way related to the trust materials or was ever transferred to the "Louis P. Contini Family Estate (A Trust)." Accordingly, we hold that the $2,000 paid for the ESP materials is not deductible under either section 212(1) or 212(2).

A deduction under section 212(3) is allowable for expenditures paid or incurred in connection with the determination, collection, or refund of any tax. Section 1.212–1(l), Income Tax Regs., further provides that expenses deductible under section 212(3) include those paid (1) for tax counsel, (2) in connection with the preparation of a taxpayer's tax returns, and (3) in connection

---

claimed under sec. 212 and its predecessor in the 1939 Code, sec. 23. We held that those taxpayers could deduct their expenses incurred to replace existing stocks with new stocks and to protect an investment in the corporation. In the present case, at the time petitioners purchased the ESP materials, petitioners had never held any investments with respect to which expenses for advice could be deductible.

with any proceedings involved in determining the extent of tax liability or in contesting any tax liability.

Petitioners argue that since the purchase price of the ESP materials entitled them to receive certain tax materials and legal representation in tax matters, the cost of those materials should be deductible under section 212(3). The record is singularly devoid of evidence as to exactly what petitioners purchased from ESP for their $2,000. Other than the family trust materials, the Court cannot determine what petitioners were entitled to receive or did receive from ESP. The record is silent as to what portion, if any, of the $2,000 was paid for tax materials or legal assistance in tax matters. On this record, we cannot allocate any portion of the $2,000 to legal services and materials on tax matters and we therefore conclude that no portion is deductible under section 212(3). *Merians v. Commissioner*, 60 T.C. 187, 188, 190 (1973).

We also reject petitioners' argument that the $2,000 is deductible as an educational expense under section 162 and section 1.162–5(a), Income Tax Regs. There is no showing that the materials from ESP either (1) maintained or improved skills required by petitioner-husband as an engineer under section 1.162–5(a)(1), Income Tax Regs.; or (2) met any express requirements of his employer imposed as a condition to the retention of his job as an engineer under section 1.162–5(a)(2), Income Tax Regs.

Petitioners used the trust materials herein to create in 1976 a trust funded with family jewelry, the family home, and petitioner-husband's services and salary. Their motivations in creating that trust were, as the record shows, purely personal, and the amount paid for the ESP materials is not deductible.[3] The Court does not question petitioners' evident sincerity and good faith in seeking to deduct the payment they made to ESP. It might be well at this point to repeat what the Court had to say last year in a similar case: [4]

It is unfortunate for petitioners—indeed an injustice to all citizens who assume their fair share of the tax burdens—to have persons or corporations

---

[3]See *Harris v. Commissioner*, T.C. Memo. 1981–46; *Gran v. Commissioner*, T.C. Memo. 1980–558; *Morgan v. Commissioner*, T.C. Memo. 1978–401, and *Johnston v. Commissioner*, T.C. Memo. 1978–121, in which this Court also disallowed amounts paid for ESP materials under sec. 212 and sec. 162.

[4]See Judge Dawson's note 4 in *Gran v. Commissioner*, T.C. Memo. 1980–558.

promoting tax avoidance gimmicks of any kind which lack legal or economic substance. Perhaps more serious consideration should be given to enforcement action to prevent trafficking in such schemes.

With respect to the $51 paid to L. E. Fritts, however, we reach a different result. Petitioner testified (1) that he paid this amount to his coworker as his one-half share of the cost of certain tax books that they purchased jointly, (2) that the books were published by a major publishing house and not by ESP, and (3) that he used the books to prepare his 1975 tax return. Petitioner submitted the $51 check that he paid to Fritts into evidence, and that check bears the notations "Executive Tax Desk Manual" and "Federal Tax Course." We conclude that the expense was paid in connection with the determination of taxes and the preparation of the 1975 tax return and is thus deductible under section 212(3) and section 1.212–1(l), Income Tax Regs.

To reflect the foregoing,

*Decision will be entered under Rule 155.*