AGNES L. HICKS, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Hicks v. Commissioner
Docket No. 2645-79.
United States Tax Court
T.C. Memo 1982-200; 1982 Tax Ct. Memo LEXIS 550; 43 T.C.M. (CCH) 1081; T.C.M. (RIA) 82200; April 14, 1982. *552 Barbara J. Rose, for the petitioner. Lee A. Kamp, for the respondent. SHIELDS
MEMORANDUM FINDINGS OF FACT AND OPINION SHIELDS, Judge:* Respondent determined a deficiency of $ 2,182.39 in petitioner's 1976 Federal income tax and an addition to the tax of $ 112.72 under section 6653(a). [1] The issues for our decision are: (1) whether a portion of petitioner's earnings is taxable to her or to a family trust she created; (2) whether petitioner may deduct $ 2,000 paid in 1976 for materials she purchased for use in creating the "family trust;" and (3) whether petitioner is liable for an addition to tax for 1976 due to negligence or intentional disregard of rules and regulations within the meaning of section 6653(a). *553 FINDINGS OF FACT Some of the facts have been stipulated and are so found. The stipulation of facts and attached exhibits are incorporated herein by this reference. Petitioner Agnes L. Hicks (hereinafter Mrs. Hicks) was a resident of Portland, Oregon, when she filed her petition in this case. She filed her Federal income tax return on Form 1040 for the calendar year 1976 with the Internal Revenue Service Center at Ogden, Utah. During 1976, petitioner formed a partnership with one Doris Rangan to operate a health food store called the West Slope Health Center in West Portland, Oregon. On May 26, 1976, Agnes L. Hicks signed a preprinted document entitled "Declaration of Trust Of This Equity Trust." Mrs. Hicks signed as Trustor-Creator. She designated her adult children, Michael R. Hicks and Ann E. Hicks, as trustees of the trust. By this declaration, petitioner purported to create the "Agnes L. Hicks Equity Trust." Mrs. Hicks had purchased the Declaration of Trust, together with other trust forms and corresponding instructions for creating a family equity trust for $ 2,000 from a salesman for the Institute of Individual Religious Studies (hereinafter the Institute). *554 The Declaration of Trust provides, in pertinent part: The above named Trustees, for themselves and their successors, IN TRUST, do hereby agree to accept properties, real and personal, to be conveyed and acknowledge acceptance of and delivery of all of the property specified, together with all the terms of The Trust herein set forth, agreeing to conserve and improve The Trust, to invest and reinvest the funds of Said Trust in such manner as will increase the financial rating of The Trust (Estate) during the period of outstanding liabilities of the various properties and enterprises in commerce for gain, exercising their best judgment and discretion, in accordance with The Trust Minutes, making distributions of portions of the proceeds and income as in their discretion, and according to the minutes, should be made, making complete periodic reports of business transactions, and upon final liquidation distributing the assets to the beneficiaries as their interests may appear; and in all other respects administering Said Trust (Estate) in good faith strictly in conformity hereto. POWERS Trustees may do anything any individual may legally do in any state or county, subject to the *555 restrictions herein noted. They shall continue in business, conserve the property, commercialize the resources, extend any established line of business in industry or investment, as herein specially noted, at their discretion for the benefit of THIS TRUST, as such, viz: buy, sell or lease land for the surface or mineral rights; buy or sell mortgages, securities, bonds, notes, leases of all kinds, contracts or credits of any form, patents, trademarks, or copyrights; * * * A minute of Resolutions of The Board of Trustees authorizing what it is they determine to do or have done shall be evidence that such an act is within their power. All funds paid into the treasury are and become a part of the CORPUS of THIS TRUST. TRUST ADMINISTRATION
Guideline The Trustees shall regard this instrument as their sufficient guide, supplemented from time to time by their resolutions (said resolution to be ratified ALWAYS by a MAJORITY of the Trustees then in office and participating in the issuing meeting) covering contingencies as they arise and are recorded in the minutes of their meetings, which are the by-laws, rules and regulations of THIS TRUST. Authority The Trustees, officers, agents *556 or employees possess only such authority as awarded them herein. * * * TRUSTEES' DECLARATION OF PURPOSE THE DECLARED PURPOSE OF THE TRUSTEES OF THIS TRUST shall be to accept rights, title and interests in and to real and personal properties, whether tangible or intangible, conveyed by THE CREATOR HEREOF AND TRUSTOR hereto to be the corpus of THIS TRUST, so that [Agnes L. Hicks] can maximize [her] lifetime efforts through the utilization of [her] Constitutional Rights; for the protection of [her] family in the pursuit of [her] happiness through [her] desire to promote the general welfare, all of which [Agnes L. Hicks] feels she will achieve because [her] RELIGIOUS BELIEFS are sustained by this Trust. * * * [2]
LIFE OF THE TRUST Closure This Trust shall continue for a period of twenty-five years from date, unless The Trustees shall unanimously determine upon an earlier date. The Trustees may at their discretion, because of threatened depreciation in values, or other good and sufficient reason necessary to protect or conserve *557 trust assets, liquidate the assets, distribute and close The Trust at any earlier date determined by them. The Trust shall be proportionately and in a pro rata manner distributed to the beneficiaries. * * * Coincident with the creation of the trust, documents entitled "Units of Beneficial Interest" were issued. These documents provided, in part, that each certificate of beneficial interest "conveys no interest of any kind in The Trust assets, management or control thereof." Initially, Mrs. Hicks received all 100 units. Shortly thereafter, she conveyed 45 units to her son, Michael, and 45 units to her daughter, Ann, retaining 10 for herself. On May 27, 1976, Mrs. Hicks executed an unrecorded bill of sale which purported to convey to the trust her residence, including household furnishings, linens and sports equipment, other real property located at Parkdale, Oregon, securities, a life insurance policy which provided for a flexible purchase pension contract, an account receivable for a loan to Doris Rangan, a checking account at Canadian Imperial Bank, and a savings account at Far West Federal Savings. On the same date she executed a warranty deed which conveyed her residence *558 to the Trust. In addition, by separate writing, Mrs. Hicks purported to transfer her partnership interest in the West Slope Health Center to the Trust. She also executed an agreement purporting to lease to the Trust her automobile, a 1974 Audi, in exchange for a monthly rental of $ 180. However, no payments were made to Mrs. Hicks by the trust for the use of her automobile, and she did not report any such payments as income on her tax return for 1976. After the alleged transfer of her real and personal property, Mrs. Hicks' only remaining individual assets were a checking account at Canadian Imperial Bank with a balance of $ 30 and an annuity paid by General Electric, her late husband's employer. Petitioner continued to live in her personal residence after she conveyed it to the trust. She neither entered into a written lease agreement with the trust nor produced any records of rental payments to the trust for the use of the house. Petitioner's stock certificates were never transferred to the trust. The vendor under a land sale contract for the purchase of real estate at Parkdale, Oregon, was not informed that petitioner's interest had been transferred to the trust. The *559 partnership books were not closed to reflect a change of partners. Although Mrs. Hicks transferred her lifetime services to the trust, no contracts or other written agreements existed between the trust and the West Slope Health Center regarding the performance of services by the trust for the partnership. Mrs. Hicks did not inform the preparer of the partnership return of the transfer of her interest in the partnership to the trust. The West Slope Health Center partnership return reflects that Mrs. Hicks' distributive share of net earnings of $ 11,314 was paid to her individually. On its fiduciary income tax return the trust included in income $ 6,599.83 of "Nominee Income." Petitioner's individual income tax return reported ordinary income received from the partnership of $ 11,314 and an adjustment to income of $ 6,599.83. The package of documents purchased from the Institute included a preprinted form entitled "Bank Resolution Minute" which was executed by Michael and Ann as trustees. It provided that Mrs. Hicks, as Executive Trustee, along with Michael, as Executive Secretary, could draw checks on the trust account at the Canadian Imperial Bank. It provided further that *560 Mrs. Hicks is authorized to borrow money for and on behalf of the trust only when approved by a majority of the board of trustees. Besides signing the fiduciary income tax return, no other evidence was introduced as to what services Michael performed for the trust or whether he attended any trustee meetings. Ann performed no duties for the trust and attended no trustee meetings. The trust conducted no business in 1976. No trustees' meetings were held after the creation of the trust nor were any resolutions passed. Mrs. Hicks managed the books and drew checks on the trust account in payment of many of her personal expenses as well as those of her children. [3] These amounts were then deducted as administrative expenses on the trust's fiduciary income tax return for 1976. Petitioner's individual and fiduciary income tax returns were prepared from books and records she furnished to her accountant in Thousand Oaks, California, who was referred to her by a salesman from the Institute. Her partnership return was prepared by an accountant *561 in Rockville, Maryland. Michael Hicks was 23 in 1976. During that summer he worked in a civilian capacity at Guantanamo Naval Base in Cuba. In the autumn, he attended Portland State University. Although she did not furnish over half of his support during 1976, petitioner claimed a dependency exemption for Michael on her tax return for that year. Petitioner paid $ 2,000 in 1976 to the Institute of Individual Religious Studies for the purchase of materials to create the trust. This amount was claimed as a miscellaneous deduction on her return with this explanation: "Cost to conserve assets and/or minimize taxes." In his notice of deficiency for 1976, respondent determined that petitioner's full distributive share of partnership earnings as well as interest, dividends, and rental income reported by the trust was reportable by the petitioner. [4] The miscellaneous deduction for the conservation of assets and/or minimization of taxes was disallowed. Respondent also determined that the addition to the tax under section 6653(a) applied to the year in issue. *562 OPINION Respondent assails petitioner's purported "family trust" on three grounds, including (1) the assignment of income doctrine, (2) the grantor trust provisions (sections 671 through 677), and (3) sham transaction and lack of economic reality theories. With respect to the first ground, respondent contends that the income petitioner received from the partnership is taxable to her, not to the trust. Petitioner, on the other hand, asserts that the conveyance of the partnership interest was valid and that respondent's adjustments were arbitrary. The law is clear that compensation for services is taxable to the person who earns it. Lucas v. Earl,281 U.S. 111 (1931). It makes no difference whether the ultimate recipient of the diverted income is an individual or, as here, an entity such as a trust. United States v. Basye,410 U.S. 441, 449 (1973). Moreover, the person or entity who controls the income, not necessarily the one who ultimately receives it, is properly taxable thereon. American Savings Bank v. Commissioner,56 T.C. 828, 838-839 (1971); *563 Wesenberg v. Commissioner,69 T.C. 1005 (1978). In an ever-lengthening list of cases we and others have held that so-called "family trust" arrangements are not effective to divert taxpayers' earnings from themselves to trusts. Gran v. Commissioner,664 F.2d 199 (8th Cir. 1981), affg. a Memorandum Opinion of this Court; Vnuk v. Commissioner,621 F.2d 1318, 1320-1321 (8th Cir. 1980), affg. a Memorandum Opinion of this Court; Horvat v. Commissioner,582 F.2d 1282 (7th Cir. 1978), affg. a Memorandum Opinion of this Court, cert. denied 440 U.S. 959 (1979); Vercio v. Commissioner,73 T.C. 1246, 1254 (1980); Wesenberg v. Commissioner,supra.[5] We reach the same conclusion here. *564 The facts of this case reveal that no contract or written agreement existed between the West Slope Health Center and the trust for petitioner's services. The partnership paid petitioner's share of distributive earnings to petitioner individually, and she reported the amount received on her income tax return for 1976. Although she adjusted her income by deducting approximately half of the income received from the partnership, which was reported on the trust return as "nominee income", this act was ineffective to shift the incidence of taxation on that amount away from petitioner. Although she purported to convey the exclusive use of her lifetime services to the trust, petitioner nonetheless continued the same personal relationship to the partnership as before the creation of the trust. The trust had no right to supervise her services or to determine her remuneration, and petitioner had no legal duty to earn money or perform services for the trust. Under such circumstances, we view the conveyance as merely constituting an anticipatory assignment of income which was ineffective to shift the incidence of taxation from petitioner to the trust. Gran v. Commissioner,supra. *565 In the alternative, respondent argues that petitioner should have reported the income purportedly earned by the trust pursuant to the grantor trust provisions of sections 671 through 678. The application of these sections to family trust arrangements was fully explained in Wesenberg v. Commissioner,supra. To summarize, if a grantor of a trust retains certain specified powers enumerated in sections 673 through 677, then he will be treated as the owner of that portion of the trust over which he may exercise such powers. As owner of the trust, the grantor must take into account, in computing his taxable income, all items of income, deduction, and credit to which he would have been entitled had the trust not been in existence during the period for which he is treated as owner. Sec. 671. Section 1.671-3, Income Tax Regs.
Petitioner contends that she did not retain any tainted powers. However, respondent argues that petitioner should be treated as owner of the trust under all the grantor trust provisions. *566 Section 677(a) provides generally that the grantor shall be treated as the owner of any portion of a trust whose income, without the approval or consent of any adverse party, is, or in the discretion of the grantor or nonadverse party, or both, may be distributed to, or accumulated for future distribution to, the grantor or the grantor's spouse. Before a party may be considered adverse, he or she must have a substantial beneficial interest in the trust, which must be adversely affected by the exercise or nonexercise of the power the party possesses. Sec. 672. Whether the powers of a trustee are adverse to those of the grantor is a factual question to be decided in each case. Vercio v. Commissioner,73 T.C. 1246 (1980). Petitioner bears the burden of proving respondent's determination incorrect. Welch v. Helvering,290 U.S. 111 (1933); Rule 142(a). Although the trust instrument herein provides that any action must have the consent of a majority of the trustees, we are persuaded that the consent of Ann or Michael was not needed in order for petitioner to act in behalf of the trust. Our conclusion *567 is supported by the following considerations: (1) they attended no meetings; [6] (2) they produced no minutes or resolutions establishing that a majority of the trustees had agreed to any of the activity in the trust account; and (3) only petitioner kept the books and wrote checks on the trust account. Under these circumstances, we conclude that Mrs. Hicks exercised total control over the distributions of trust income, many of which were used to satisfy her personal obligations, including household maintenance, automobile expenses, and medical care, without seeking or obtaining the consent of her children. The possibility that Ann and Michael were adverse parties does not help petitioner since the exercise of her powers is not preconditioned on their consents. See Vercio v. Commissioner,73 T.C. 1246 (1980). Therefore, we conclude that petitioner should be treated as "owner" of the trust [7] under section 677(a). [8]
*568 On brief, petitioner asserts for the first time that she is entitled to a miscellaneous deduction of $ 2,000 paid to the Institute for the package of materials utilized in setting up her "family trust." She argues that the amount is deductible under section 212 for the management and conservation of her income-producing assets or for the minimization of taxes. Respondent contends in reply brief that this issue was not properly raised, but that, in any event, no deduction should be allowed for a plan that was never implemented and lacked economic reality. It is generally true that we will not consider new issues that are raised for the first time on brief. Horvath v. Commissioner,59 T.C. 551 (1973). This is so because such consideration would often surprise and subject to disadvantage the opposing party. However, where, as here, there is no prejudice to the surprised party, we hold that the issue is properly before us. Petitioner may not deduct under section 212 expenses *569 which are personal in nature. Section 262. Sections 1.211-1 and 1.212-1(e), Income Tax Regs. Nor may petitioner deduct under section 212 expenditures related to property or property rights which she did not hold for the production of income when she incurred the expenses. Section 1.212-1(g), Income Tax Regs.; Contini v. Commissioner,76 T.C. 447, 452 (1981). When petitioner created the trust, she purported to transfer to it many assets of a personal nature including her residence and furnishings. In Contini v. Commissioner,supra, we held that the purported transfer of such property did not entitled the taxpayer to a deduction for a similar fee. Although the record indicates that petitioner purportedly transferred securities and savings accounts, it does not indicate that she received any advice from the Institute specifically relating to these assets. From a review of the record it appears that petitioner merely purchased preprinted forms and general instructions on creating a "family trust." There is no evidence that *570 she received any investment advice with respect to the assets she purportedly transferred or how much of the fee pertained to such advice, if any was received. Accordingly, respondent's disallowance of the $ 2,000 payment to the Institute is sustained. Gran v. Commissioner,supra.[9]
The final issue for decision is whether any part of the underpayment is due to negligence or intentional disregard of rules and regulations within the meaning of section 6653(a). Petitioner has the burden of proving that this addition to tax is improper. Otis v. Commissioner,73 T.C. 671, 675 (1980); Rule 142(a). Petitioner urges on brief that her reliance on an accountant to prepare her individual return is a defense to the addition to tax under this section. While it is true that, under certain circumstances, *571 good faith reliance on the advice of a qualified accountant can be a shield to the section 6653(a) addition to tax, see Conlorez Corp. v. Commissioner,51 T.C. 467, 475 (1968), generally the duty of filing accurate returns cannot be avoided by placing the responsibility on an agent. Bailey v. Commissioner,21 T.C. 678 (1954). Petitioner testified that she sent her books and records to an accountant in Thousand Oaks, California, who prepared her tax return. She was referred to this accountant by the salesman who sold her the trust materials that were published by the Institute. There is no evidence that she independently sought out a lawyer or accountant who advised her with respect to the tax effects of creating a trust or who otherwise gave advice which resulted in the deficiency. She offered no evidence that the accountant did anything more than prepare her return from the books and records presented to the accountant. From a review of the entire record we conclude that petitioner has not established that she supplied her accountant with correct information. Accordingly, we sustain respondent's determination with respect to the addition to *572 tax under section 6653(a). To reflect the foregoing, Decision will be entered under Rule 155.
Footnotes
*. This case was tried before Judge Cynthia Holcomb Hall who subsequently resigned from the Court. By order of the Chief Judge dated February 8, 1982, the case was reassigned to Judge Perry Shields↩ for disposition. 1. All section references are to the Internal Revenue Code of 1954, as in effect during the year in issue. Unless otherwise indicated, any reference to "Rules" shall be deemed to refer to the Tax Court Rules of Practice and Procedure.↩
2. We have omitted three biblical and one Islamic quotations added by Mrs. Hicks which purport to express her religious beliefs.↩
3. These expenses included household maintenance, automobile insurance and repairs, utilities, telephone, and medical, including dental, care.↩
4. Besides petitioner's full distributive share of petitioner's earnings, respondent determined that Mrs. Hicks was required to report the following additional items of income: ↩
Dividends
$ 1,106.40
Interest
144.19
Rents and Royalties
525.00
$ 1,775.59
5. See also Hoelzer v. Commissioner,T.C. Memo. 1982-6; Hanson v. Commissioner,T.C. Memo. 1981-675; Broncatti v. Commissioner,T.C. Memo. 1981-452; Bolter v. Commissioner,T.C. Memo. 1981-378; Minckler v. Commissioner,T.C. Memo. 1981-343; Thelen v. Commissioner,T.C. Memo. 1981-302↩.
6. From a review of the transcript we find petitioner's testimony on this point, as well as that of her children, to be evasive and not credible. Petitioner claimed to have held three or four trustee meetings in May 1976 and that she made records of meetings, but no such records were produced at trial. ↩
7. However, we concur with petitioner that the fictionalized rental income of $ 525 allegedly paid for the use of her residence which was deducted by the trust should not be set up as an item of income in computing her individual tax liability. ↩
8. As we have held the trust income taxable to petitioner on assignment of income and grantor trust principles, we need not reach respondent's alternative argument that the trust is a sham.↩
9. See also Hoelzer v. Commissioner,supra;Deeks v. Commissioner,T.C. Memo. 1981-501; Sundheim v. Commissioner,T.C. Memo. 1981-139; Raemer v. Commissioner,T.C. Memo. 1981-138↩.