ESTATE OF CLARENCE E. SNYDER AND LOTTA SNYDER, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Estate of Snyder v. Commissioner
Docket No. 10057-79.
United States Tax Court
T.C. Memo 1982-258; 1982 Tax Ct. Memo LEXIS 487; 43 T.C.M. (CCH) 1337; T.C.M. (RIA) 82258; May 10, 1982. Gloria T. Svanas, for the petitioners. Mark H. Howard, for the respondent. DRENNEN
MEMORANDUM FINDINGS OF FACT AND OPINION DRENNEN, Judge: This case was assigned to and heard by Special Trial Judge John J. Pajak pursuant to the provisions of section 7456(c) of the Internal Revenue Code *489 of 1954, [1] and Rule 180. [2] The Court agrees with and adopts the Special Trial Judge's Opinion which is set forth below. OPINION OF THE SPECIAL TRIAL JUDGE PAJAK, Special Trial Judge: Respondent determined deficiencies in petitioners' Federal income taxes for 1975 and 1976 in the amounts of $ 1,827.95 and $ 8,303.13, respectively. The questions for decision are: (1) whether certain income is taxable to the petitioners or to a so-called family trust and (2) whether the cost of purchasing a family trust package from Educational Scientific Publishers is a tax deductible expense. FINDINGS OF FACT Some of the facts have been stipulated. The stipulation of facts and the attached exhibits are incorporated herein by this reference. Clarence E. Snyder, now deceased, and Lotta Snyder, his *490 surviving widow, resided in Marshall, Texas, when their petition in this case was filed. For ease of reference, we shall refer to Clarence E. Snyder as Mr. Snyder, to Lotta Snyder as petitioner, and to both of them as the Snyders. The Snyders lived in Marshall, Texas, during 1975 and 1976. They timely filed joint income tax returns for 1975 and 1976. The petition was filed while Mr. Snyder was alive. No administrator or executor has been appointed and there has been no administration of Mr. Snyder's estate. In view of these circumstances, the parties agreed that under Texas law petitioner may represent the estate of her husband through her counsel. On June 26, 1975, Mr. Snyder executed, as grantor, a trust instrument which created the C.E. Snyder Equity Trust (Trust). Mr. Snyder used a trust form prepared by Educational Scientific Publishers (ESP). The purpose of the Trust was set forth as follows: THE DECLARED PURPOSE OF THE TRUSTEES OF THIS TRUST shall be to accept rights, title and interest in and to real and personal properties, whether tangible or intangible, conveyed by THE CREATOR HEREOF AND GRANTOR HERETO to be the corpus of THIS TRUST. Included therein is the *491 exclusive use of his lifetime services and ALL of his EARNED REMUNERATION ACCRUING THEREFROM, from any current source whatsoever, so that C. E. SNYDER (Grantor-Creator's Name) can maximize his lifetime efforts through the utilization of his Constitutional Rights; for the protection of his family in the pursuit of his happiness through his desire to promote the general welfare, all of which C. E. SNYDER (Grantor-Creator's Name) feels he will achieve because they are sustained by his RELIGIOUS BELIEFS. On June 27, 1975, Mr. Snyder purportedly transferred to the Trust: "THE EXCLUSIVE USE OF [his] LIFETIME SERVICES AND ALL OF THE CURRENTLY EARNED REMUNERATION ACCRUING THEREFROM." On June 26, 1975, petitioner purportedly had transferred all her property and her lifetime services to Mr. Snyder. The next day, he conveyed all their real and personal property to the Trust, which included the home they lived in and in which petitioner was living at the time of trial. The Snyders also conveyed various nonincome producing items of personal property including their furniture and household appliances. The Snyders also transferred a number of notes receivable. The Snyders and their adult *492 children, Reita V. Dorsett (Reita) and Clarence Dale Snyder (Dale), were the trustees of the Trust during 1975 and 1976. The Trust was to be administered by its trustees, with a majority vote of the trustees required for expenditures (including compensation of the trustees). The Trust was established for a period of 25 years. However, at their discretion the trustees by unanimous vote could liquidate the Trust at any time "because of threatened depreciation in values, or other good and sufficient reason * * *." Upon liquidation, the assets of the Trust were to be distributed pro rata to its beneficiaries. The beneficial interests were divided into 100 units in certificate form. These were preprinted ESP forms. Ownership of a beneficial certificate did not give the holder any title or interest in, or right to manage, the Trust property. This was set forth in the certificates of beneficial interest which stated that the benefits conveyed consisted solely of the "emoluments as distributed by the action of The Trustees and nothing more." The certificates were transferable and in fact transfers of the units were made. The certificates were issued in the names of members of the *493 Snyders' family. After the transfers, petitioner held forty units; Mr. Snyder held eight units; Reita and Dale each held ten units; Donna Sue Dorsett, Linda Kay Dorsett, Kathy Snyder and Jennifer Snyder each held eight units. Both of the Snyders had real estate licenses in the years in issue. The Snyders were engaged in the real estate business before and after the Trust was formed. They sold property, managed property and collected amounts due on notes receivable. They conducted their real estate business in Marshall, Texas. During 1975 and 1976, Mr. Snyder maintained an office in his home for the real estate business and for the Trust. After the Trust was created, the Snyders continued to operate their business through the Trust. The Snyders agreed to assign to the Trust all commissions from their real estate services pursuant to a contract. The Snyders reported on their individual returns real estate commissions in the amounts of $ 2,422.58 and $ 501.00 in 1975 and in the amounts of $ 2,000.00 and $ 306.00 in 1976. Other real estate sales commissions earned by the Snyders were reported on the Trust returns for 1975 and 1976 in the amounts of $ 2,600.85 and $ 7,836.00, *494 respectively. The Trust reported the income earned on the notes receivable transferred to the Trust by the Snyders. The Trust deducted various personal expenses of petitioners on the fiduciary income tax returns filed by the Trust in 1975 and 1976. These expenses included medical expenses of the Trustees (apparently the Snyders) and the $ 5,000.00 cost of purchasing the trust package from ESP. The respondent disregarded the income, deductions and credits against tax reported by the Trust and included those amounts in computing the Snyders' taxable income and credits to the extent such items are properly taken into account in computing their individual income tax liability in 1975 and 1976. Other related adjustments were made in each year, the maximum standard deduction was allowed in each year, and a deduction for exemptions was made in 1975. In preparing the notice of deficiency for 1976, respondent mistakenly characterized the allocation of $ 750.00 to the Snyders as "real estate commissions." The $ 750.00 was shown on the Trust return as gross rents. The $ 7,836.00 amount of real estate commissions reported by the Trust was not specifically set forth in the notice of deficiency. *495 However, it was included in the total income allocated to the Snyders. On brief petitioners conceded the tax liability for the real estate commissions in the amounts of $ 2,600.85 in 1975 and $ 750.00 in 1976 since these amounts were earned by the individual licensed salespersons (the Snyders). They conceded the additional self-employment taxes on these amounts. Neither party called to the Court's attention the fact that real estate commissions reported by the Trust in 1976 were $ 7,836.00, and not $ 750.00. The theory of petitioners' concessions would apply to the correct amount of real estate commission income. Since $ 7,836.00 was the actual amount of real estate commissions in question in 1976, we assume that petitioners meant to concede this amount. OPINION This so-called family trust situation is a classic case of an improper attempt to avoid taxes and represents anticipatory assignments of income by the Snyders. [3] They assigned notes receivable and real estate commissions to the Trust. It is well established as an elementary principle of Federal income taxation that income is taxable to the one who earns it and taxation of that income cannot be escaped by anticipatory *496 arrangements assigning it to another. Lucas v. Earl,281 U.S. 111 (1930). The petitioners apparently recognize this principle, at least in part, because their brief concedes additional tax liability for the real estate commissions "earned by the individual licensed salespersons" and the resulting additional self-employment taxes. This principle has been applied to taxpayers in an everlengthening list of so-called family trust cases similar to the present one. See, e.g., Vnuk v. Commissioner,T.C. Memo. 1979-164, affd. 621 F.2d 1318 (8th Cir. 1980); Vercio v. Commissioner,73 T.C. 1246 (1980); Markosian v. Commissioner,73 T.C. 1235 (1980); Wesenberg v. Commissioner,69 T.C. 1005 (1978); Horvat v. Commissioner,T.C. Memo. 1977-104, affd. without opinion 582 F.2d 1282 (7th Cir. 1978). *497 Although petitioners claim that Reita and Dale as trustees and holders of units of beneficial interest were adverse parties for purposes of sections 671 through 678, we do not agree. Whether the economic arrangements of a trust cause a trustee to be an adverse party is a factual question dependent on the merits of each case. Paxton v. Commissioner,520 F.2d 923 (9th Cir. 1975), affg. 57 T.C. 627 (1972). Petitioners have failed to prove that the interests of Reita and Dale were "substantial beneficial interests" and on this record we find to the contrary. Even if their interests could be characterized as substantial, the record does not indicate in any way that Reita and Dale were adverse parties. Sections 672 and 674. See Wesenberg v. Commissioner,supra;Broncatti v. Commissioner,T.C. Memo. 1981-452; and Antonelli v. Commissioner,T.C. Memo. 1980-544. Rather, there is nothing in the record to show by a preponderance of the evidence that these two children of the Snyders were anything but related or subordinate parties presumed to be subservient to the grantor under section 672(c) for purposes *498 of sections 674 and 675. Although not raised by petitioners, it is clear that the Snyders were not adverse parties to each other. Vercio v. Commissioner,supra.Accordingly, respondent's determination is sustained under the grantor trust provisions of sections 671 through 678. There is a separate basis for sustaining respondent. The Snyders themselves disregarded the Trust by reporting part of their real estate commissions on their own 1976 returns even though they ostensibly had transferred their lifetime services to the Trust. This together with our review of the record compels us to conclude that the Trust lacked economic substance and was a nullity for Federal income tax purposes for the reasons set forth in Markosian v. Commissioner,supra.Although the parties have taken opposing positions with respect to the legal existence of the Trust under the laws of the State of Texas, we need not decide that issue, for even assuming its validity under State law, the Trust "cannot be recognized as a separate jural entity for Federal income tax purposes." Markosian v. Commissioner,supra at 1241. The Snyders' adherence *499 to form does not avoid the substance of this Court's consistent rulings that ESP trusts do not shelter taxpayers from taxation. [4]
Since we have ruled the Trust a nullity, we also find the Trust improperly deducted the $ 5,000.00 cost of purchasing the trust package from ESP, which we believe to be a personal expense of petitioners.In Contini v. Commissioner,76 T.C. 447 (1981), we held that a similar payment to ESP was a nondeductible personal expense. [5] A determination to the same effect in Gran v. Commissioner,T.C. Memo. 1980-558, was affirmed per curiam by the Eighth Circuit in 664 F.2d 199 ( Nov. 23, 1981, 48 AFTR 2d 81-6179, 81-2 USTC par. 9796). We also hold that the payment of $ 5,000.00 in this case was a nondeductible personal expense under section 262. *500 Petitioners have failed to meet their purden of proof that respondent's determinations were incorrect in any way. Welch v. Helvering,290 U.S. 111 (1933); Rule 142(a). Accordingly, respondent's determinations are sustained in all respects. Decision will be entered for the respondent.
Footnotes
1. All section references are to the Internal Revenue Code of 1954, as amended, unless otherwise indicated. All references to Rules are to the Tax Court Rules of Practice and Procedure. ↩
2. Pursuant to the order of the Chief Judge, on the authority of the "otherwise provided" language of Rule 182, the post-trial procedures set forth in that rule are not applicable in this case.↩
3. In light of our findings and the agreement of the parties, we hold that under Texas law petitioner may represent the estate of her husband. See Beatty v. Commissioner,T.C. Memo. 1980-168. We do not deem it necessary to set forth the complete discussion of Texas law and this Court's Rules which is contained in Beatty.↩
4. See Antonelli v. Commissioner,supra;Basham v. Commissioner,T.C. Memo. 1980-545; Corcoran v. Commissioner,T.C. Memo. 1980-546 and Dombrowski v. Commissioner,T.C. Memo. 1980-261↩.
5. See also, Shuman Equity Trust v. Commissioner,T.C. Memo. 1981-264; Raemer v. Commissioner,T.C. Memo. 1981-138; Sundheim v. Commissioner,T.C. Memo. 1981-139; Corcoran v. Commissioner,supra;Morgan v. Commissioner,T.C. Memo. 1978-401; Johnston v. Commissioner,T.C. Memo. 1978-121↩.