BYRONE O. SAUNDERS AND GLORIA M. SAUNDERS, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Saunders v. Commissioner
Docket No. 3490-79.
United States Tax Court
T.C. Memo 1982-322; 1982 Tax Ct. Memo LEXIS 422; 44 T.C.M. (CCH) 82; T.C.M. (RIA) 82322; June 9, 1982. Gloria T. Svanas, for the petitioners. Mark H. Howard, for the respondent. DRENNEN
MEMORANDUM FINDINGS OF FACT AND OPINION DRENNEN, Judge: This case was assigned to and heard by Special Trial Judge John J. Pajak pursuant to the provisions of section 7456(c) of the Internal Revenue Code of 1954, [1] Tax Court Rules of Practice and Procedure. [2] The Court agrees with and adopts the Special Trial Judge's Opinion which is set forth below. *426 OPINION OF THE SPECIAL TRIAL JUDGE PAJAK, Special Trial Judge: Respondent determined deficiencies in petitioners' Federal income tax for 1976 in the amount of $ 3,807.00 and an addition to tax under section 6653(a) in the amount of $ 190.35. The issues for decision are: (1) whether certain income is taxable to petitioners or to a so-called family trust; (2) whether petitioners are entitled to deduct the cost of purchasing a family trust package from Educational Scientific Publishers; (3) whether petitioners are entitled to any deductions with respect to residential property occupied rent-free by their son and (4) whether petitioners are liable for the addition to tax for 1976 due to negligence or intentional disregard of rules and regulations within the meaning of section 6653(a). FINDINGS OF FACT To the extent stipulated, the facts are so found. Petitioners resided in Amarillo, Texas, at the time their petition in this case was filed. Petitioners filed joint individual income tax returns for the taxable year 1976. During 1976, petitioner Byrone O. Saunders (Byrone) operated a truck repair service. On their 1976 income tax return petitioners' occupations were *427 reported as "SE MGMT Consultant" and as "HW MGMT Consultant," respectively, for Byrone and his wife, petitioner Gloria M. Saunders (Gloria). On June 5, 1976, Byrone purchased a trust package from Educational Scientific Publishers (ESP) for the purpose of establishing a so-called family trust. He paid ESP $ 2,435.00. No part of that purchase price was specifically allocated to legal service. In June, 1976, Byrone executed a Declaration of Trust to operate under the name of Byrone O. Saunders Equity Trust (Trust). Petitioners used the documents obtained from ESP to create the Trust and take related actions. The Trust instrument states that: The declared purpose of the Trustees of THIS TRUST shall be to accept rights, title and interest in and to real and personal properties, whether tangible or intangible, conveyed by the creator hereof and grantor hereto to be the corpus of THIS TRUST. Included therein is the exclusive use of his lifetime services and all of his earned remuneration accruing therefrom, from any current source whatsoever, so that Byrone O. Saunders can maximize his lifetime efforts through the utilization of his Constitutional Rights; *428 for the protection of his family in the pursuit of his happiness through his desire to promote the general welfare, all of which Byrone O. Saunders feels he will achieve because they are sustained by his RELIGIOUS BELIEFS. On June 5, 1976, Gloria purportedly transfered the exclusive use of her "lifetime services and all of the currently earned remuneration therefrom" to Byrone. On the same day Byrone purportedly transferred the exclusive use of his and Gloria's "lifetime services and all currently earned remuneration therefrom" to the Trust. Byrone also purported to convey all of his real and personal property [3] to the Trust, including petitioners' home and another residential property. Byrone's business, United Truck Service, and a bank account were included in the purported conveyance.In return petitioners received beneficial units in the Trust. *429 The beneficial interests were divided into 100 units in certificate form. These certificates were preprinted ESP forms. Ownership of a beneficial certificate did not give the holder any title or interest in, or right to manage, the Trust property. This was set forth in the certificates of beneficial interest which state that the benefits conveyed consisted solely of the "emoluments as distributed by the action of The Trustees and nothing more." The certificates were transferable and in fact various transfers of the units were made to family members.
Byrone testified that petitioners were the trustees of the Trust during 1976. We observe that in the initial documents Kayla Jo Palmer appears as a trustee but apparently she was a mere straw to set up the Trust. Hereafter, all references to trustees are to petitioners as such. Byrone was the executive trustee. Petitioners used the Trust to pay their own medical expenses, utilities, automobile, entertainment, and other personal expenses. The Trust deducted various personal expenses of the petitioners on the fiduciary income tax return filed by the Trust in 1976, including utility expenses, medical expenses, automobile expenses *430 and entertainment expenses. The Trust also deducted depreciation on petitioners' home. On brief, petitioners concede that their residential homestead cannot be transferred by quitclaim deed under Texas law. Petitioners purportedly conveyed a second residential property to the Trust. They continued to allow a son to live rent-free in this house during 1976 and to date.This residential property was subject to a mortgage on which petitioners were mortgagors. After the purported conveyance, this mortgage was not changed to name the Trust as mortgagor. The mortgage payments on this property were made by checks drawn on the bank account of the Trust. Although Byrone purportedly conveyed his United Truck Service business to the Trust, he operated the business essentially the same after its alleged transfer to the Trust as he had before.The employer identification number, the business license and the sales tax exemption number of United Truck Service were not changed after the alleged transfer. United Truck Service continued to pay the rent on its business premises. It is clear that petitioners at all times retained full control over the assets of the Trust, and as trustees *431 of the Trust were empowered to "do anything any individual may legally do" with those assets. After creation of the Trust, petitioners continued to utilize the property which had been transferred to the Trust for their own benefit and that of their family in exactly the same manner as it would have been used had the Trust not been created. After creation of the Trust, Byrone reported the income and deductions from United Truck Service, which resulted in a net profit, on the Form 1041 filed by the Trust in 1976. This income was omitted from the individual Federal income tax return filed by petitioners in 1976. Byrone reported $ 2,225.00 in "Consulting Fees" from the Trust on petitioners' return. On their return petitioners claimed a deduction of $ 2,435.00 for the cost of the Trust. The Court left the record open for substantiation of this amount. The checks submitted after trial were made out to the Byrone Saunders Equity Trust and to the Byrone Saunders Educational Trust. No mention of the Educational Trust was made at the trial or on brief. The checks to the second trust apparently were endorsed by an Oliver G. Harris, trustee, and exceeded the amount claimed as a deduction. *432 We do not know what these checks actually represented. We will assume, arguendo, that the amount claimed as a deduction was the amount paid to ESP. Respondent determined that the income and deductions from United Truck Service in 1976 was improperly reported by the Trust and was includable in petitioners' income. Respondent determined that the net profit from United Truck Service was $ 22,505.86 instead of the $ 3,947.00 shown on petitioners' return. Respondent disallowed the $ 2,435.00 claimed as the cost of the Trust. Respondent reduced petitioners' gross income by the $ 2,225.00 reported as consulting fees from the Trust. Respondent imposed an addition to tax under section 6653(a). Respondent also made other adjustments which were not put into issue. OPINION The facts of this case involve yet another ESP family trust.The reasons set forth below compel us to sustain respondent's determinations. ESP trusts simply do not shelter taxpayers from taxation. An ESP trust fails to reflect economic reality and is a flagrant device to avoid the proper taxation of income. [4]
*433 We quote from petitioners' brief at page 6: The Supreme Court has described as the "first principal [sic] of income taxation" the maxim that income must be taxed to the one who earns it. Commissioner v. Culbertson, [unofficial citation], 337 U.S. 733, 739 - 40 (1949). We agree, and we find that Byrone earned the income from the truck repair service; the Trust did not. Taxation of income cannot be escaped by anticipatory arrangments assigning it to someone else. Lucas v. Earl,281 U.S. 111 (1930). Repeatedly, trust devices similar to the one used by petitioners have been found to be anticipatory assignments of income which did not shelter the taxpayer from taxation on his income, regardless of the effect of these assignments under State law. See, e.g., Vnuk v. Commissioner,T.C. Memo. 1979-164, affd. 621 F.2d 1318 (8th Cir. 1980); Vercio v. Commissioner,73 T.C. 1246 (1980); Wesenberg v. Commissioner,69 T.C. 1005 (1978); Horvat v. Commissioner,T.C. Memo. 1977-104, *434 affd. 582 F.2d 1282 (7th Cir. 1978). Under the maxim quoted above, there is no question but that respondent's determination must be sustained. No claim is made here that there was an adverse party for purposes of the grantor trust provisions. It is clear that petitioners were not adverse parties to each other. Vercio v. Commissioner,supra.[5] They exercised complete control over the Trust to pay numerous personal expenses of their own. Even if the Trust had some economic substance, which it plainly did not, under the grantor trust provisions of sections 671 through 677, all such income is taxable to Byrone (and to petitioners on their joint return). Vercio v. Commissioner,supra;Wesenberg v. Commissioner,supra;Snyder v. Commissioner,T.C. Memo. 1982-258; see Corcoran v. Commissioner,T.C. Memo. 1980-546. Byrone disregarded the Trust by paying himself consulting *435 fees even though he ostensibly had transferred his lifetime services to the Trust. This plus our review of the record compels us to conclude that the Trust lacked economic substance and was a nullity for Federal income tax purposes for the reasons so carefully set forth in Markosian v. Commissioner,73 T.C. 1235 (1980). Although the parties have taken opposing positions with respect to the legal existence of the Trust under the laws of the State of Texas, we need not decide that issue, for even assuming its validity under State law, the Trust "cannot be recognized as a separate jural entity for Federal income tax purposes." Markosian v. Commissioner,supra at 1241. Bryone testified that he was advised, apparently by an ESP salesperson, that the $ 2,435.00 cost of the ESP trust package was deductible. He was ill advised. In Contini v. Commissioner,76 T.C. 447 (1981), we held that a similar payment to ESP was a nondeductible personal expense. [6] A determination to the same effect in Gran v. Commissioner,T.C. Memo. 1980-558, *436 was affirmed per curiam by the Eighth Circuit in 664 F.2d 199 (1981). We also hold that petitioners' payment of $ 2,435.00 was a nondeductible personal expense under section 262. Epp v. Commissioner, 78 T.C.     (May 12, 1982). During the year in question and to date, petitioners generously allowed their son to occupy rent-free the other residential house they owned. On brief, petitioners claim deductions should be allowed for interest and taxes with respect to this property, as well as depreciation, utilities, maintenance and insurance which "all owners are now allowed to deduct on income producing residential property when rented to a relative" and assert that the trustees made a "farsighted claim" *437 of "allowable" deductions on the Trust return. The short answer is that this was not income producing property. Moreover, this farsighted claim overlooks section 280A as recently amended by Congress. Section 280A[7] was originally enacted by Congress as part of the Tax Reform Act of 1976 (Pub. L. No. 94-455, sec. 601, 90 Stat. 1520, 1569) as its response to the concern that rental of property used as a residence by the taxpayer or members of the taxpayer's family "afforded the taxpayer unwarranted opportunitites to obtain deductions for expenses of a personal nature." Bolton v. Commissioner,77 T.C. 104, 108 (1981). *438 Section 280A(a) states the general rule that, "Except as otherwise provided in this section," no deduction is allowable with respect to the use of a dwelling unit which is "used * * * as a residence" by the taxpayer during the taxable year. An exception is provided in section 280A(b) for deductions, such as interest and taxes, which are allowable to the taxpayer without regard to their "coinnection with his trade or business (or with his income-producing activity)." Under section 280A(d)(1), a taxpayer is considered to have used a dwelling unit as a residence during the taxable year if he uses the unit "for personal purposes" for a specified period. Section 280A(d)(2)(A) provides, in turn, that a taxpayer shall be deemed to have used a dwelling unit for personal purposes on any day that the unit is so used by a member of the taxpayer's family, as defined in section 267(c)(4). [8] Petitioners' son is a lineal descendant and thus is encompassed by the definition of a family member. *439 Congress became concerned about the fact that section 280A as originally enacted resulted in the denial of deductions for expenses of renting a residence to a relative even when a fair rental was charged. H. Rept. 97-404, 97th Cong. 1st Sess., 8-9 (1981). On December 29, 1981, Congress met this concern by enacting Pub. L. No. 97-119, 95 Stat. 1641 and adding a new paragraph (3) to section 280A(d). The new paragraph provides, in pertinent part, as follows: (3) RENTAL TO FAMILY MEMBER, ETC., FOR USE AS PRINCIPAL RESIDENCE.-- (A) IN GENERAL.-- A taxpayer shall not be treated as using a dwelling unit for personal purposes by reason of a rental arrangement for any period if for such period such dwelling unit is rented, at a fair rental, to any person for use as such person's principal residence. This amendment applies to taxable years beginning after December 31, 1975, except that for those years beginning before January 1, 1980, it applies only to years for which a refund or assessment of deficiency was not barred by law on December 29, 1981. Since we are in the process of determining *440 whether there is a deficiency, the amendment obviously is applicable in this case. Sections 6213 and 6214. Since no rent was paid, we find that petitioners' second residential property was not rented by them at a fair rental to their son for use as his principal residence. Therefore, the recent amendment of section 280A does not change the picture insofar as petitioners are concerned. This property must be treated as a dwelling unit used for personal purposes as a residence by petitioners during 1976. Section 280A(d)(1) and (2). With respect to this property, petitioners are limited under the statute to deductions for items such as interest and taxes, otherwise allowable under sections 163 and 164, respectively. Sections 280A(a) and (b). Lastly, since petitioners offered no evidence showing the amounts of interest and taxes paid with reference to this property, they failed to carry their burden of proof, and no deduction can be allowed for such items. [9]Welch v. Helvering,290 U.S. 111 (1933); Rule 142(a).
*441 Respondent also determined that petitioners negligently or intentionally disregarded the rules and regulations resulting in their liability for the additions to tax under section 6653(a). We agree. Byrone would have us believe his response to the question; "And how much of your home is used in connection with the operation of this trust?" -- "All of it." We do not believe that, nor do we believe Byrone or his wife believes that. Byrone claimed that he relied upon an accountant named Marcena Tillman who prepared his return. We note Ms. Tillman's address on the return is the same as petitioners' home address. Byrone is a successful businessman and is possessed of the ability to comprehend the significance of his actions. The record indicates that petitioners were fully aware of the tax avoidance nature of their scheme. The five percent addition to tax under section 6653(a) for negligence or intentional disregard of rules and regulations in the family trust cases in situations similar to the one before us has been consistently upheld by this Court. Wesenberg v. Commissioner,supra. *442 [10]
By reporting the consulting fees on petitioners' individual income tax returns, Byrone disregarded the purported assignment of his lifetime services. Byrone testified that these funds were withdrawn from the Trust for "our living expenses to buy groceries and clothes with." Yet if he actually had assigned all his services to the Trust, he should have immediately returned the fees to the Trust, leaving him without money for living expenses. We find it difficult to believe that petitioners could have envisioned the Trust as anything other than a "flagrant tax avoidance scheme." Wesenberg v. Commissioner,supra at 1015. Petitioners have failed to carry their burden of proof that respondent was in error. Welch v. Helvering,supra;Rule 142(a). We sustain respondent's determination as to the addition to tax under *443 section 6653(a). Petitioners made no arguments with respect to the other adjustments made by respondent. Consequently, based on our holdings, all of respondent's determinations are sustained. Decision will be entered for the respondent.
Footnotes
1. All section references are to the Internal Revenue Code of 1954, as amended, unless otherwise indicated. All references to Rules are to the Tax Court Rules of Practice and Procedure. ↩
2. Pursuant to the order of assignment, on the authority of the "otherwise provided" language of Rule 182, Tax Court Rules of Practice and Procedure↩, the post-trial procedures set forth in that rule are not applicable in this case.
3. The purported conveyances were detailed, as can be seen from the partial sampling which follows: 2 - hand painted china plates (hanging), 1 - dust mop, 24 cassette tapes, 1 - 12 string guitar, 1 - oster "viberator", 1 - watchdog, 2 sets of weddings rings, 2 - love seats, 1 - color television, 2 sets of "loovers", 1 - hanging owl, 6 gallon ceramic slip, 2 - timers and 1 quart fly spray.↩
4. See Antonelli v. Commissioner,T.C. Memo. 1980-544; Basham v. Commissioner,T.C. Memo. 1980-545 and Corcoran v. Commissioner,T.C. Memo. 1980-546↩.
5. See Ferguson v. Commissioner,T.C. Memo. 1982-251; Broncatti v. Commissioner,T.C. Memo. 1981-452 and Antonelli v. Commissioner,supra.↩
6. See also, Brown v. Commissioner,T.C. Memo. 1982-253; Shuman Equity Trust v. Commissioner,T.C. Memo. 1981-264; Raemer v. Commissioner,T.C. Memo. 1981-138; Sundheim v. Commissioner,T.C. Memo. 1981-139; Corcoran v. Commissioner,supra;Morgan v. Commissioner,T.C. Memo. 1978-401; Johnston v. Commissioner,T.C. Memo. 1978-121↩.
7. SEC. 280A.DISALLOWANCE OF CERTAIN EXPENSES IN CONNECTION WITH BUSINESS USE OF HOME, RENTAL OF VACATION HOMES, ETC. (a) GENERAL RULE--Except as otherwise provided in this section, in the case of a taxpayer who is an individual * * * no deduction otherwise allowable under this chapter shall be allowed with respect to the use of a dwelling unit which is used by the taxpayer during the taxable year as a residence. (b) EXCEPTION FOR INTEREST, TAXES, CASUALTY LOSSES, ETC.--Subsection (a) shall not apply to any deduction allowable to the taxpayer without regard to its connection with his trade or business (or with his income-producing activity). (d) USE AS RESIDENCE-- (1) IN GENERAL.--For purposes of this section, a taxpayer uses a dwelling unit during the taxable year as a residence if he uses such unit (or portion thereof) for personal purposes for a number of days which exceeds the greater of-- (A) 14 days, or (B) 10 percent of the number of days during such year for which such unit is rented at a fair rental. For purposes of subparagraph (B), a unit shall not be treated as rented at a fair rental for any day for which it is used for personal purposes. (2) PERSONAL USE OF UNIT.--For purposes of this section, the taxpayer shall be deemed to have used a dwelling unit for personal purposes for a day if, for any part of such day, the unit is used-- (A) for personal purposes by the taxpayer * * * or by any member of the family (as defined in section 267(c)(4)) of the taxpayer * * *↩
8. Section 267(c)(4) provides that: "The family of an individual shall include only his brothers and sisters (whether by the whole or half blood), spouse, ancestors, and lineal descendants; * * *"↩
9. Respondent allowed petitioners the standard deduction since the adjusted itemized deductions were less. The adjusted itemized deductions do not reflect any allowance for interest or real estate taxes. Although the returns do not prove the amounts claimed thereon, petitioners' 1976 return and the Trust's 1976 return to not show any claim for a real estate tax deduction, and the Trust return claims $ 251.00 as an interest deduction. Even if this amount of interest had been allowed as a deduction and added to the adjusted itemized deductions, petitioners would still benefit from the standard deduction.↩
10. See Broncatti v. Commissioner,supra;Corcoran v. Commissioner,supra;Basham v. Commissioner,supra and Antonelli v. Commissioner,↩ supra.