DONALD R. and GAIL E. BACOT, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent; DONALD R. BACOT, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Bacot v. Commissioner
Docket Nos. 23898-84; 24314-84.
United States Tax Court
T.C. Memo 1989-77; 1989 Tax Ct. Memo LEXIS 81; 56 T.C.M. (CCH) 1322; T.C.M. (RIA) 89077; February 27, 1989
Donald R. and Gail E. Bacot, pro se. Gilbert T. Gembacz, for the respondent. WRIGHT
MEMORANDUM FINDINGS OF FACT AND OPINION WRIGHT, Judge: By two notices of deficiency dated April 6, 1984, respondent determined the following deficiencies in, and additions to, petitioners' [1] Federal income tax: Addition to Tax
Year
Deficiency
Section 6653 (a) [2]
1977
$ 4,685.00
$ 234.00
1978
1,149.00
57.00
1980
6,614.00
331.00
*85 After concessions, the remaining issues for decision are: (1) whether certain business expenses claimed by petitioners were ordinary and necessary expenses under section 162; (2) whether certain assets, for which petitioners claimed depreciation deductions, were used in a trade or business; (3) whether petitioners were entitled to claim an investment tax credit in 1980 and resulting carrybacks to 1977 and 1978 for an aircraft and automobile purchased in 1980; (4) whether petitioners underreported rental income from leasing their aircraft; (5) whether rental expenses claimed by petitioners were ordinary and necessary expenses under section 162 or incurred to produce income under section 212; (6) whether petitioners used the correct method of depreciation for their aircraft; (7) whether an automobile, which petitioners leased and claimed an investment tax credit for in 1979, ceased to be section 38 property in 1980; (8) whether petitioners were entitled to claim a deduction for moving expenses; and (9) whether petitioners were subject to an addition to tax under section 6653(a). FINDINGS OF FACT Some of the facts of this case have been stipulated and are so found. The stipulation *86 of facts and supplemental stipulation of fact, together with the exhibits attached thereto, are incorporated herein by this reference. Petitioners resided in Kenai, Alaska, for part of 1980 until they moved to Lynnwood, Washington. Petitioners resided in Bakersfield, California, at the time they filed their petition. While residing in Alaska, petitioner worked for an oil company. Petitioner worked for seven days and was then off for the next seven. After moving to Washington, petitioner was employed as a police officer in Seattle. During 1980, petitioner engaged in certain consulting activity in addition to his aforementioned jobs. Petitioner called this activity Bacot Confidential. Petitioner, who is a pilot, purchased a Cessna aircraft (the Cessna) in 1979 and sold it in August 1980. On or about September 9, 1980, petitioner purchased a used 1978 Mooney aircraft (the Mooney aircraft) for the stated price of $ 50,000. Petitioner purchased the Mooney aircraft through a dealer, Competition Aircraft, Inc. (Competition). The Mooney aircraft was subject to a "lease-back agreement" between Competition, as lessee, and Howard A. Blackley, as lessor. This agreement was for a *87 term of one year beginning June 23, 1979. Respondent's auditor requested from Competition a copy of any lease-back agreement between Competition and petitioner for the Mooney aircraft. The record, however, contains no lease-back agreement between Competition and petitioner. On their 1980 Federal income tax return, petitioners included a Schedule C on which they reported income from Bacot Confidential of $ 2,639 and total deductions of $ 14,287 for a net loss of $ 11,648. At trial, petitioners introduced into evidence the following detail of their Schedule C income: Charter Flights
Mooney Aircraft
8/15/80
$ 175
10/10/80
150
12/6/80
150
Cessna Aircraft
4/19/80
275
4/27/80
125
5/10/80
0
5/17/80
150
5/23/80
215
5/25/80
116
$ 1,356 From E. Pratt (payment in cash)
Feb. 1980 - Payment for consulting
re: Airplanes prospective Marathon
tax clients, etc. (16 hrs. at
$ 40.00/hr.)
640 Dec. 21 thru 23, 1980 - Payment for
consulting re: Aircraft leaseback -
tax practice (19.6 hrs. at $ 40.00/hr.)
784 Total Gross Income on Schedule C
2,780 Amway
Sales
81 Cost of Goods Sold
(222)
Total Income on Schedule C
$ 2,639 *88 Included in the total deductions were the following business expenses claimed by petitioners on their Schedule C: Advertising
$    178.00
Car and truck expenses
2,543.00
Dues and publications
255.00
Insurance
1,030.00
Laundry and cleaning
21.00
Office supplies
365.00
Postage
39.00
Rent
117.00
Supplies
362.00
Taxes
365.00
Telephone
694.00
Travel and entertainment
6,840.00
Utilities
193.00
Total
$ 13,002.00
In addition, petitioners claimed depreciation deductions of $ 1,285 on their Schedule C for an aircraft, typewriter and automobile. The depreciation schedule reflected that the aircraft was sold in August 1980 and the automobile was purchased in October 1980. The depreciation schedule did not reflect an automobile leased by petitioners for which they claimed an investment credit in 1979. Schedule E of petitioners' 1980 return reflected total rental income from the Mooney aircraft of $ 3,416, depreciation on the plane of $ 9,476, and other expenses of $ 8,162. Petitioners claimed the resulting net loss of $ 14,222 from the rental of the Mooney aircraft. Petitioners also claimed a $ 5,500 investment tax credit for an *89 automobile and the Mooney aircraft acquired in 1980. Petitioners applied $ 116 of the credit to their 1980 tax liability and carried back $ 4,685 of the unused credit to the 1977 taxable year and $ 1,149 to 1978. Apparently, petitioners received tax refunds for those years. Finally, petitioners claimed an adjustment to income in 1980 for a moving expense of $ 4,119 for their move from Alaska to Washington. In the notices of deficiency, respondent disallowed all of petitioners' claimed business expenses claimed on Schedule C for Bacot Confidential. Respondent also disallowed the entire depreciation expense claimed on Schedule C. Respondent further determined that petitioners received an additional $ 1,171 rental income from the Mooney aircraft. In addition to decreasing the depreciation claimed on the aircraft, respondent also disallowed a portion of the rental expenses claimed with respect to the aircraft. Respondent also disallowed the investment credit and resulting carrybacks to 1977 and 1978 claimed by petitioner. Respondent further determined that an investment credit claimed by petitioners in 1979 on a leased automobile ceased to be section 38 property in 1980 and that *90 the full amount of investment credit was subject to recapture. Respondent also disallowed in full the moving expense claimed by petitioners. Although respondent denied exemptions for two dependents claimed by petitioners, respondent now concedes this issue. [3]
OPINION
Whether Petitioners were Engaged in a Trade or Business
The first issue for our consideration is whether petitioners' consulting activity, Bacot Confidential, was a trade or business during 1980. Section 162(a) generally allows a deduction for the ordinary and necessary expenses paid during the taxable year in carrying on a trade or business. Section 167(a)(1) generally allows a deduction for depreciation for property used in a trade or business. In addition, section 38(a) allows a credit against tax for certain investments in property which is subject to depreciation. See also sections 46(a) and 48(a)(1). Accordingly, the threshold issue before us in deciding whether petitioners *91 were entitled to claim business expenses, business depreciation, and business investment tax credits with respect to Bacot Confidential is whether petitioners were engaged in a trade or business. In holding that a taxpayer was engaged in the trade or business of gambling, the Supreme Court recently articulated the following standard for section 162(a): We accept the fact that to be engaged in a trade or business, the taxpayer must be involved in the activity with continuity and regularity and that the taxpayer's primary purpose for engaging in the activity must be for income or profit. A sporadic activity, a hobby, or an amusement diversion does not qualify. Commissioner v. Groetzinger,480 U.S. 23, 35 (1987). The Supreme Court further stated that whether a taxpayer is engaged in a trade or business is a factual inquiry. Commissioner v. Groetzinger,480 U.S. at 35 (citing Higgins v. Commissioner,312 U.S. 212, 217 (1941)). Expenses incurred in investigating a potential new business, or in preparing to enter a new business are not deductible under section 162. Richmond Television Corp. v. United States,345 F.2d 901, 907 (4th Cir. 1965), *92 vacated and remanded on other issues 382 U.S. 68 (1965); Dean v. Commissioner,56 T.C. 895, 902-903 (1971). Petitioners assert that Bacot Confidential has been involved in business counseling and assisting petitioners' clients to prepare for tax examinations since 1979. Accordingly, petitioners argue that their claimed expenses were ordinary and necessary business expenses during 1980. Petitioners further assert that the nature of their business necessitated extensive travel in Alaska, and petitioners owned an airplane for this business travel because "air travel is one of the primary modes of transportation in Alaska." Respondent's determinations are presumed correct, and accordingly, petitioners bear the burden of proof on this issue. Welch v. Helvering,290 U.S. 111, 115 (1933); Rule 142(a). Based on the facts before us, we hold that petitioners have failed to meet their burden of proving that they were engaged in a trade or business in 1980. At trial, petitioners introduced photocopies of canceled checks, invoices, and summary sheets supporting the claimed expenses. As we informed petitioners at trial, we admitted this evidence *93 solely for the purpose of proving the amount expended. Such evidence does not, however, prove the existence of a trade or business nor the business purpose of such expenditures. Petitioners' remaining evidence consists of petitioner Donald Bacot's testimony. Petitioner testified that his consulting business took him all over Alaska and eventually to Seattle. In their memorandum of law, petitioners assert that after 1980 their "business" grew substantially and that in 1981 their income exceeded $ 150,000 and is presently in the "hundreds of thousands of dollars" and that there are now offices in both Seattle, Washington, and Bakersfield, California. These assertions are wholly self-serving and not corroborated by any evidence. We are not required to accept petitioners' self-serving statements and decline to do so here without further supporting evidence. Geiger v. Commissioner,440 F.2d 688 (9th Cir. 1971), affg. a Memorandum Opinion of this Court. According to petitioners' supporting schedule for their reported Schedule C total income of $ 2,639, only $ 1,424 represented receipts for consulting. [4] The consulting income of $ 1,424 consisted of two cash receipts *94 of $ 640 and $ 784 for 16 and 19.6 hours, respectively, of consulting for an E. Pratt. Although petitioners assert that the various names contained in the summary of claimed travel and entertainment expenses were, and largely still are, clients of theirs, petitioners only received income from one of these "clients," E. Pratt. Petitioners offer no further evidence of regular business activity primarily engaged in for the purpose of making a profit; they have not offered testimony of clients, business correspondence, or any other evidence from which we can determine the nature and frequency of their activity. Accordingly, we hold that petitioners have failed to carry their burden of proof and hold for respondent on his disallowance of the claimed business expenses, depreciation, and investment credit. Included in petitioners' claimed expenses is $ 256.50 sales tax paid on the automobiles in 1980. Although petitioners are precluded *95 from deducting this expense under section 162(a), section 164(a)(4) allows petitioners a deduction for this sales tax. Aircraft Rental Activity Underreported Income
In the notice of deficiency, respondent determined that petitioners received $ 4,587 in rental income from the Mooney aircraft rather than the $ 3,416.00 that petitioners reported on their return. Petitioners did not address this issue at trial, nor in their memorandum of law. Moreover, petitioners introduced a schedule of income totaling $ 4,588 from aircraft leaseback. Accordingly, petitioners failed to carry their burden of proof, and we hold for respondent on this point. Welch v. Helvering, supra; Rule 142(a) Disallowed Deductions
The next issue for decision is whether respondent properly disallowed portions of petitioners' claimed deductions for the chartering of the Mooney aircraft. Section 162(a) generally allows a deduction for the ordinary and necessary expenses paid during the taxable year in carrying on a trade or business. If an activity fails to rise to the level of a trade or business, deductions are still allowed for the ordinary and necessary expenses paid for the production *96 of income. Sec. 212(1). Respondent disallowed the following expenses claimed by petitioners on their Schedule E because they did not establish to respondent's satisfaction that the expenses were incurred, and even if incurred, were either ordinary and necessary expenses of a business or for the production of income: Taxes
$    25.00
Interest
2,004.00
Orientation Fee
1,356.00
Fuel
25.00
Inspection
87.00
Equipment
176.00
Customs Fee
25.00
Maintenance
14.00
Wash
15.00
$ 3,727.00
The nature and frequency of petitioners' aircraft rental activity is unclear to us. Petitioner introduced one page from his pilot's log book reflecting 12 flights, 3 of which were included on Schedule C. Petitioner does not explain the nature of the remaining 9 flights. Furthermore, although the record indicates petitioners' Mooney aircraft was subject to a leaseback prior to petitioners' purchase, no such agreement involving petitioners is in evidence, although petitioners at various times refer to the leaseback of their aircraft. Petitioners have failed to establish that the aircraft chartering activity was engaged in with continuity and regularity for the primary *97 purpose of receiving income or profit. Accordingly, we hold that petitioners' aircraft rental activity did not constitute a trade or business and therefore petitioners are not entitled to deductions under section 162(a). Commissioner v. Groetzinger, supra; Rule 142(a). We next address whether section 212(1) allows petitioners deductions for their claimed aircraft rental expenses which were disallowed by respondent. Respondent disallowed petitioners' claimed aircraft expenses on two grounds. In the notice of deficiency, respondent initially determined that petitioners failed to substantiate their claimed expenses. At trial, petitioners introduced copies of various credit card receipts and canceled checks for fuel, copies of canceled checks purportedly for equipment, and copies of various interest expense statements from petitioners' creditors. This evidence substantiates that these expenditures were incurred, but nothing more. Petitioners also introduced a handwritten summary sheet purporting to explain the following cash expenditures: (1) orientation fee paid to an instructor to check petitioner on a retractable gear airplane; (2) the fee for taxes to renew *98 petitioner's pilot license so he could promote the leaseback of the aircraft; and (3) the inspection fee paid to enter Canada while exploring business plans with a client. Petitioners introduced no invoices or receipts to support these self-serving statements, and we hold petitioners have failed to adequately substantiate that these claimed cash expenditures were incurred. Respondent's second basis for disallowance was that petitioners failed to adequately establish that the disallowed expenses were incurred for the production of income. "Expenses, to be deductible under section 212, must be 'ordinary and necessary.' Thus, such expenses must be reasonable in amount and must bear a reasonable and proximate relation to the production or collection of taxable income * * *." Sec. 1.212-1(d), Income Tax Regs. Of the disallowed expenses which petitioners have now substantiated, petitioners have only proved that the $ 25 fuel expense and $ 1,670 of the claimed interest are reasonably and proximately related to the production or collection of income, and we hold for petitioners as to these deductions. The remaining $ 334 of interest expense was paid to Nordstrom Federal Credit Union and *99 Chase Bank and does not appear to be related to the production or collection of income. Although the deduction is disallowed under section 212(1), section 163(a) allows petitioners a deduction for this remaining $ 334 as interest expense. As for the remaining claimed deductions, we hold petitioners have failed to carry their burden of proof. Aircraft Depreciation
The next issue before us relates to the proper depreciation method for petitioners' Mooney aircraft. On their 1980 tax return, petitioners computed depreciation of $ 9,476 for the aircraft using the 200 percent declining balance depreciation method over a useful life of seven years. In the notice of deficiency, respondent determined allowable depreciation of $ 8,107 using the 150 percent declining balance method over a seven-year useful life. Section 167(a)(2) allows a depreciation deduction for a reasonable allowance for the exhaustion, wear and tear of property held for the production of income. Section 167(b)(2) generally provides that "reasonable allowance" includes the 200 percent declining balance method. Section 167(c)(2), however, limits the use of the 200 percent declining balance method to, inter alia, *100 property acquired after 1953 which has a useful life of at least three years and where the "original use" of the property commences with the taxpayer. The regulations define "original use" as the first use to which the property is put, whether or not such use corresponds to the use of the property by the taxpayer. Sec. 1.167(c)-1(a)(2), Income Tax Regs. The regulations also provide that the 150 percent declining balance method produces a reasonable allowance under section 167(a). [5]
Petitioner was not the first user of the Mooney aircraft. Rather, the evidence shows that the aircraft was owned and leased out prior to petitioner's ownership. Accordingly, we uphold respondent's determination using the 150 percent method. Investment Credit on the Aircraft
We next address whether petitioners were entitled to claim an investment credit in 1980, and resulting carrybacks to 1977, 1978, and 1979, for their 1980 purchase of the 1978 *101 Mooney aircraft. Section 38(a) generally provides a credit against income tax for investment in certain depreciable property. Section 46(a)(2) generally determines the amount of the credit. The amount of the credit is a percentage of the "qualified investment," as determined under section 46(c). For used property, qualified investment is a percentage of the cost of "used section 38 property," as defined in section 48(c)(1). Section 48(a)(1) generally defines section 38 property to include tangible personal property upon which depreciation is allowable and which has a useful life of three years or more. Section 48(c)(1) defines used section 38 property and excludes from that definition property "if, after its acquisition by the taxpayer, it is used by a person who used such property before such acquisition" or by certain related persons. Section 1.48-3(a)(2)(i), Income Tax Regs., provides examples of situations not qualifying for used section 38 property because of the previous user. One example of disqualification from used section 38 status is where property subject to a lease is sold subject to the lease, or sold upon termination of the lease, and the property is used after *102 the sale by a person who used the property as lessee before the sale. Respondent disallowed petitioners' claimed investment credit for the aircraft because its previous use disqualifies it as used section 38 property. In the alternative, respondent disallowed the investment credit because petitioners did not show the amount of petitioners' qualified investment in the plane. The evidence reflects ownership and use of the Mooney aircraft prior to petitioners'. This prior use was through a lease-back arrangement between the prior owner, as lessor, and Competition, as lessee. Respondent determined that this prior use disqualified the aircraft from being used section 38 property pursuant to section 48(c)(1). Petitioners bear the burden of proving by a preponderance of the evidence that respondent's determination is incorrect. Rule 142(a). Petitioners offered no evidence as to the user of the aircraft in the rental activity from which we can examine the correctness of respondent's determination. Accordingly, we hold petitioners have not carried their burden of proof on this issue. Because we hold for respondent on his first theory, we do not address his alternative theory. *103 Recapture of Investment Credit
The next issue is whether an automobile that petitioner leased and claimed an investment credit for in 1979 ceased to be section 38 property in 1980. Section 47(a)(1) generally provides for the recapture of investment credit claimed in a prior year when property ceases to be section 38 property before the end of its useful life. In order to qualify as section 38 property, depreciation must be allowable on the subject property. Section 48(a)(1). This in turn requires that the property be held either in a trade or business, or for the production of income. Sec. 167(a). Respondent determined that the automobile ceased to be section 38 property in 1980. Petitioners argue in their petition that they "used" the car in 1980 but overlooked including it on the 1980 return. The inquiry is not, however, whether the automobile was used and included on the return. The threshold issue here is whether the automobile was used in a trade or business so that it was depreciable and thus continued to qualify as section 38 property. We have already held petitioners were not engaged in a trade or business in 1980. Accordingly, we hold for respondent that the *104 leased automobile ceased to be section 38 property in 1980 and that the investment credit was subject to recapture. Moving Expense
We next address whether petitioners were entitled to claim a deduction for the expenses of their move from Alaska to Washington. Section 217(a) generally allows a deduction for moving expenses paid in connection with the commencement of work as an employee or a "self-employed individual" at a new principal place of work. Section 217(f)(1) defines self-employed individual as the owner of an entire interest in an unincorporated trade or business. The moving expense deduction is further conditioned upon: (1) the new principal place of work being at least 35 miles farther from the taxpayer's former residence than was his former principal place of work, section 217(c)(1)(A); and (2) the taxpayer either being employed full-time for at least 39 weeks during the 12-month period immediately following his arrival at his new principal place of work, or being full-time employed or performing services as a self-employed individual for at least 78 weeks during the 12 months following the taxpayer's arrival provided 39 of the weeks were during the initial 24-month *105 period, section 217(c)(2). Respondent's disallowance of petitioners' moving expense is based upon petitioners' not fulfilling the statutory requirements of section 217 as well as a lack of substantiation of the amounts incurred. At trial, petitioner introduced receipts and canceled checks to establish the moving expenditures. Although we have held that petitioner was not engaged in a trade or business, and accordingly could not be a self-employed individual, petitioner was an employee of the Seattle Police Department, and that qualified his new principal place of work. [6]Alaska and Washington are sufficiently far apart to satisfy the mileage requirement of section 217(c)(1)(A). Petitioner still must, however, meet the time requirement. Although petitioner testified at trial that he quit his job sometime in 1981, he produced no evidence of whether he worked full-time for the 39-week period required under section 217(c)(2)(A). Accordingly, petitioners have failed to carry their burden of proof that they were entitled to a deduction for moving expenses. Welch v. Helvering, supra; Rule 142(a).
*106 Section 6653(a) Addition to Tax
We now address the final issue of whether petitioners are subject to the addition to tax under section 6653(a), as determined by respondent in his notice of deficiency. Section 6653(a) provides for an addition to tax of 5 percent of any underpayment if any part of the underpayment is due to negligence or the intentional disregard of rules or regulations. Negligence under section 6653(a) is the lack of due care or failure to do what a reasonable and ordinarily prudent person would do under the circumstances. Neely v. Commissioner,85 T.C. 934, 947 (1985). Respondent's determination of negligence is presumed correct, and petitioners bear the burden of proving otherwise. Hall v. Commissioner,729 F.2d 632, 635 (9th Cir. 1984), affg. a Memorandum Opinion of this Court; Burwell v. Commissioner,89 T.C. 580 (1987); Luman v. Commissioner,79 T.C. 846, 860-861 (1982); Rule 142(a). Petitioners introduced no evidence at trial with respect to this issue, nor did they address it in their memorandum of law. Upon reviewing the record, and particularly in light of petitioner's assertion *107 that he assists people in audits before the Internal Revenue Service, we hold that petitioners have not overcome the presumption of correctness of respondent's determination. In light of the foregoing, Decisions will be entered under Rule 155.
Footnotes
1. On April 16, 1985, this Court granted respondent's motion to dismiss petitioner Gail E. Bacot from the case for lack of jurisdiction for taxable years 1977 and 1978 because her name was not on the notice of deficiency for those years. She remains, however, a petitioner for taxable year 1980. All references hereafter to petitioner shall be to Donald R. Bacot and all references to petitioners shall be to both Donald R. and Gail E. Bacot. ↩
2. All section references are to the Internal Revenue Code of 1954, as amended and in effect during the years in issue. All Rule references are to the Tax Court Rules of Practice and Procedure.↩
3. Respondent apparently also concedes the issue of whether petitioner was subject to self-employment tax on the income reported on Schedule C from Bacot Confidential. This issue was not among those stipulated for trial.↩
4. The remaining income and costs of goods sold relate to the chartering of petitioners' aircraft and the sale of Amway products. Respondent did not place the Amway activity at issue in the notice of deficiency. Accordingly, we do not address it.↩
5. Rev. Rul. 57-352, 1957-2 C.B. 150↩, 151, specifically provides that the 150 percent declining balance method produces a reasonable allowance under sec. 167(a) for used tangible personal property acquired after December 31, 1953.
6. Petitioners offered no evidence regarding the details of Gail Bacot's employment. Accordingly, we do not address whether her employment qualified petitioners under section 217.↩